IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GERRY ARMBRUSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| BHARAT SHAH, | ) |
| RON VITALE, | ) |
| LORETTA WILFORD, | ) Case No. 16-cv-0544-MJR-SCW |
| PHYLLIS MASTON, | ) |
| LEANDA DAVIS, | ) |
| RHONDA J. BENNETT, | ) |
| LYNNE JOHNSON, | ) |
| SUSAN HARDIN, and | ) |
| UNKNOWN IDOC AND WEXFORD | ) |
| EMPLOYEES, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

### INTRODUCTION

Pursuant to 42 U.S.C. § 1983, Plaintiff Gerry Armbruster (an Illinois Department of Corrections "IDOC" inmate) filed his second amended complaint alleging deliberate indifference against various medical Defendants related to treatment for his spinal cord compression (Doc. 58). Specifically, the complaint alleges that all of the Defendants denied him adequate medical care for his condition (Count 1), that those Defendants

failed to intervene to prevent the deliberate indifference by other Defendants (Count 2), that Defendants Bharat Shah and Wexford Health Sources, Inc. committed medical malpractice under Illinois law (Count 3), and that Wexford is liable for the actions of its employees under a theory of *respondeat superior* (Count 4). This matter is before the Court on a motion for summary judgment on the basis of failure to exhaust administrative remedies filed by Defendants Wexford Health Sources, Inc., Loretta Wilford, Phyllis Maston, Rhonda Bennett, Lynn Johnson, and Susan Hardin ("the nurse defendants")[1] (Docs. 50 and 51).[2] Plaintiff has filed a response (Doc. 59). Based on the following, the Court **DENIES** Defendants' motion for summary judgment on the narrow issue of exhaustion of administrative remedies.

## FACTUAL BACKGROUND

Plaintiff filed his second amended complaint on January 13, 2017 (Doc. 58). Plaintiff's amended complaint alleges that he began showing symptoms of spinal cord compression in the spring of 2014 (*Id.* at p. 1). These symptoms included pain in his right shoulder blade, tingling and numbness in his right arm and hand, and tingling and pain in his left arm and finger tips (*Id.*). Plaintiff first reported his symptoms to Loretta Wilford on May 13, 2014, and she scheduled Plaintiff to see the doctor the

---

[1] Defendant Leanda Davis is also a nurse with the IDOC named as a Defendant in this suit. However, she was not included in the Motion for Summary Judgment on Exhaustion (Docs. 50, 51), and an appearance and answer were filed on her behalf after that Motion was filed, so any reference to "nurse defendants" in this Order does not include Leanda Davis.

[2] Although Defendants filed their motion prior to Plaintiff filing his second amended complaint, Defendants' motion is still operable as it addresses the claims which still remain even with the filing of the second amended complaint.

following day (*Id.* at p. 5).

Plaintiff met with Bharat Shah for the first time regarding his symptoms on May 14, 2014 (Doc. 58, p. 5). Shah instructed Plaintiff to do back exercises and ordered that his blood pressure be monitored (*Id.*). Plaintiff alleges that his condition continued to worsen and that he complained to the nurse defendants every day from May 15, 2014, to May 21, 2014 (*Id.* at p. 5-6). The nurse defendants did nothing during this period except take Plaintiff's blood pressure (*Id.* at p. 6). Plaintiff saw Defendant Maston on May 20, 2014, and complained of numbness in his fingers on his right hand, tingling down both sides of his waist, issues with gripping in his right hand, difficulties walking, and pain in his lower back (*Id.* at p. 6). Defendant Maston did nothing but note that he had a follow-up appointment in eight days (*Id.*).

Plaintiff was seen again by Shah on May 28, 2014, and Plaintiff complained again of increasing numbness and tingling (Doc. 58, p. 6). He also complained that he had no gripping ability in his right hand and that he had difficulty walking (*Id.*). Shah allegedly did not provide Plaintiff with any care for his condition. Plaintiff alleges that he saw Shah several more times from June to July 2014 and he continued to display deliberate indifference to Plaintiff's deteriorating condition (*Id.* at p. 7-8). Plaintiff was released from prison on September 15, 2014, and went to Gateway Regional Medical Center ER on September 26, 2014 (*Id.* at p. 9). At that time he obtained an MRI and was diagnosed with severe spinal cord compression (*Id.*). He was transferred to SSM Health St. Mary's Hospital for emergency surgery for the compression (*Id.*). Plaintiff's

complaint alleges that Defendants refused to treat Plaintiff's condition and that as a result his spinal cord condition worsened, leaving him with pain which he continues to experience (*Id.*).

In response to Plaintiff's amended complaint (Doc. 33), Defendants Wexford Health Sources, Inc., and the nurse defendants filed a motion for summary judgment and supporting memorandum arguing that Plaintiff failed to exhaust his administrative remedies against them (Docs. 50 and 51). While Plaintiff subsequently filed a second amended complaint (Doc. 58), that complaint has no bearing on the issues raised by Defendants' summary judgment motion and the summary judgment motion is now ripe for consideration.

Defendant Wexford and the nurse defendants argue that Plaintiff failed to exhaust his administrative remedies because Plaintiff's grievance does not mention them. Plaintiff filed a grievance dated May 19, 2014, while he was at Southwestern Correctional Center (Doc. 51-2, p. 5). That grievance indicated that he saw a nurse on May 12, 2014, and the doctor the next day on May 13, 2014 (*Id.*). While Plaintiff complained about issues with numbness and tingling in his arms, neck, and hands, as well as issues with balance, Plaintiff's grievance indicated that the doctor told him he was dehydrated and to drink water, but denied him further care (*Id.*).

Plaintiff's May 19, 2014 grievance was received by his counselor on May 20, 2014, and was responded to on May 29, 2014 (Doc. 51-2, p. 5). The counselor indicated that the healthcare unit had been contacted and the counselor was informed that Plaintiff

was seen by medical personnel daily from May 13, 2014, to May 21, 2014 (*Id.*). The counselor indicated that Plaintiff was believed to be suffering from hypertension and was scheduled for follow-up with the physician but reminded Plaintiff that he could put in a sick-call request at any time (*Id.*). The grievance officer received Plaintiff's grievance on June 11, 2014, and reviewed it the following day (*Id.* at p. 4). The grievance officer recommended denial of the grievance based on the healthcare unit administrator's indication that Plaintiff was seen on eight consecutive days from May 13, 2014, to May 21, 2014, and could submit an additional sick call slip at any time (*Id.* at p. 4). The chief administrative officer concurred with the denial on June 12, 2014 (*Id.*).

Plaintiff marked his grievance for appeal to the Administrative Review Board ("ARB") on June 18, 2014. The ARB received the grievance on June 26, 2014 (Doc. 51-2, p. 3). Along with the May 19, 2014 grievance, the ARB received an additional document marked as an "Offender's Grievance" by Plaintiff (Doc. 51-2, p. 7-8). This grievance indicated that he submitted two request slips on June 18, 2014, stating his chronic issues (*Id.* at p. 7). Plaintiff indicated that a nurse told him on June 20, 2014, that Southwestern and Wexford do not have the funds to send Plaintiff to the hospital for proper care (*Id.*). Plaintiff noted that he was still experiencing numbness and tingling sensations, and that his calves hurt and he was not able to maintain his balance (*Id.*). Plaintiff acknowledged that he was seen by medical personnel for eight days straight but he only had his vitals checked on those occasions and was provided with medication for blood pressure (*Id.*).

The ARB reviewed Plaintiff's grievance on November 5, 2014 (Doc. 51-2, p. 3).

The ARB indicated that it reviewed Plaintiff's May 19, 2014, grievance regarding the doctor at Southwestern and his alleged improper treatment of his symptoms from May 13, 2014 (*Id*.). The ARB noted that it had reviewed the healthcare unit's response to Plaintiff's grievance, indicating that Plaintiff was seen on a regular basis and that it was believed he was suffering from hypertension (*Id*.). The ARB found that Plaintiff's symptoms were being appropriately addressed and, thus, denied Plaintiff's grievance.

## LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file

complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41 (7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. **at 742.**

## ILLINOIS EXHAUSTION REQUIREMENTS

As an IDOC inmate, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 ILL. ADMIN. CODE § 504.800** *et seq.* The grievance procedures first require inmates to speak with the counselor about their complaint. **20 ILL. ADMIN. CODE § 504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 ILL. ADMIN. CODE § 504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 ILL. ADMIN. CODE § 504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he

or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 ILL. ADMIN. CODE § 504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 ILL. ADMIN. CODE § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 ILL. ADMIN. CODE § 504.850(f).**

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 ILL. ADMIN. CODE § 504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 ILL. ADMIN. CODE § 504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 ILL. ADMIN. CODE § 504.850(g).**

## ANALYSIS

Defendants argue that they are entitled to summary judgment because Plaintiff's May 19, 2014 grievance does not mention the nurse defendants or Wexford and does not include any allegations which could be related to their care or any Wexford policy. Defendants also argue that this Court should not consider Plaintiff's June 22, 2014 purported grievance, which was submitted to the ARB with his May 19, 2014 grievance, as it was not properly submitted to the grievance officials at Southwestern and thus did not alert officials at Southwestern to Plaintiff's issues with the nurse defendants and Wexford.

### A. Nurse defendants

The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate must, as the very least, "include as much descriptive information about the individual as possible." **20 ILL. ADMIN. CODE § 504.810(a)(b).** *See also Ambrose v. Godinez*, **510 Fed. Appx. 470, 472 (7th Cir. 2013);** *but see Jackson v. Shepherd*, **552 Fed. Appx. 591, 593 fn.1 (7th Cir. 2014).** Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, **655 F.3d 709, 722 (7th Cir. 2011).** This fits with the purpose of the PLRA exhaustion requirement which was designed to afford correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See, e.g., Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006),** *citing Woodford v. Ngo*, **548 U.S. 81, 93 (2006).** The purpose of a grievance is to provide

prison officials a "fair opportunity" to address an inmate's complaint. *Maddox*, **655 F.3d at 713.** Indeed, the Seventh Circuit has consistently reminded district courts that "all that the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought," *Westefer v. Snyder*, **422 F.3d 570, 580 (7th Cir. 2005),** *citing Strong v. David*, **297 F.3d 646, 650 (7th Cir. 2002),** and afford prison officials an opportunity to respond, *see Pavey v. Conley*, **663 F.3d 899, 905–06 (7th Cir. 2011).**

Here, Plaintiff's grievance put the prison on notice that he was experiencing issues with his arms and back and was unable to obtain relief from healthcare unit personnel. While Plaintiff did not specifically name the nurse defendants in his May 19, 2014 grievance, it is clear from Plaintiff's counselor's response, as well as the response from the grievance officer, that the prison was aware that Plaintiff had been seen by other medical staff for his condition on numerous occasions from May 13, 2014, to May 21, 2014 (Doc. 51-2, p. 4-6). Thus, the prison was on notice that individuals other than Shah were involved in the treatment or monitoring of Plaintiff's condition. From Plaintiff's claims in his grievance, the prison had a fair opportunity to address Plaintiff's concerns regarding his treatment for his condition, whether it was treatment by Dr. Shah, who was named in the grievance, or the nurse defendants.

Further, Plaintiff's continued pursuit of his grievance beyond his counselor's response made it is clear that Plaintiff was not satisfied with the continued treatment he was receiving. As Plaintiff points out in his response, an inmate is not required to file

multiple grievances as to a continuing violation. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (citing *Parzyck v. Prison Health Services, Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010); *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004)). "[O]nce a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Id.* As the Court previously stated, Plaintiff's May 19 grievance put the prison on notice that Plaintiff took issue with his medical care for his numbness, pain, and tingling and they were aware that Plaintiff received further treatment for that condition after his May 19, 2014 grievance. They acknowledged as much in the responses by the counselor and the grievance officer. Plaintiff did not need to file a new grievance every time he was seen by a new nurse as his complaint was still the same—the treatment he was receiving for his condition was inappropriate. *See Turley*, 729 F.3d at 650 (separate grievances are only required if the facts or the complaint is different). As such, the Court finds that Plaintiff's May 19, 2014 grievance properly exhausted his claims against the nurse defendants.

The Court further notes that even if the May 19, 2014 grievance, standing on its own, did not exhaust his claims against the nurse defendants, Plaintiff submitted additional allegations to the ARB regarding the treatment that had occurred since the filing of his initial grievance. That document, submitted June 22, 2014, and received by the ARB along with his May 19, 2014 grievance, indicated that he was seen by nurses who did nothing but take his blood pressure. Although the nurse defendants make much of the fact that the June 22nd addition to his grievance was only submitted to the

ARB and not to the prison via normal grievance channels, the Court notes that the ARB did not reject that portion of the grievance on procedural grounds. The ARB could have easily disregarded that portion of Plaintiff's grievance by specifically stating in its response that the June 22, 2014 document had not been properly presented to the prison and directing Plaintiff to resubmit it to the prison for consideration. Instead, the ARB simply ruled on Plaintiff's complaint with no mention of the June 22, 2014 grievance. Even if Plaintiff's procedural failure to specifically raise his additional complaints against the nurse defendants would amount to a failure to exhaust, the ARB did not rely on that shortcoming in denying the grievance and thus cannot now claim that Plaintiff's grievance, as a whole, was procedurally deficient. *See Maddox*, **655 F.3d at 722.** As such, the Court finds that Plaintiff's May 19, 2014 grievance, as submitted to the ARB with the additional documentation, "served its function of alerting the state and inviting corrective action." *Id.* Thus, the Court **DENIES** the motion for summary judgment as to the nurse defendants—Wilford, Maston, Bennett, Johnson, and Hardin.

B. **Wexford Health Sources, Inc.**

Turning to Wexford Health Sources, Inc., Defendant Wexford argues that Plaintiff's May 19, 2014 grievance also failed to identify Wexford as the source of his inappropriate treatment and thus cannot serve to exhaust Plaintiff's claims against it. The Court agrees that the May 19, 2014 grievance does not mention Wexford. Nor do any of the responses to that grievance indicate a notice of Wexford's specific involvement in any of Plaintiff's treatment. Plaintiff's grievance indicates he went to

Dr. Shah with his condition and he was told he was simply dehydrated. The responses indicate he was seen by personnel every day for hypertension. There is no mention, even generally, of any type of policy or practice that could be attributable to Wexford. While Plaintiff argues that this Court has previously found that a prisoner need not name Wexford or any of its policies specifically, in the cases where the Court has found that the prison was on notice of Wexford's potential involvement, the prisoner had grieved activities for which Wexford was responsible and/or involved in the decision-making process. *See* **Conley v. Birch, Case No.: 11-cv-13-MJR-SCW, 2012 WL 4202702, at \*5 (S.D. Ill. Sept. 19, 2012) (prison invited to examine Wexford's policies when prisoner complained about scheduling of an x-ray);** *Harper v. Henton*, **Case No.: 11-cv-406-MJR-SCW, 2012 WL 6595159, at \* 6 (S.D. Ill. Nov. 30, 2012) (alleging sub-par care due to manpower and financial issues in the healthcare unit).** Plaintiff's May 19 grievance has no such allegations, which would put the prison on notice that he was grieving a policy or practice involving Wexford.

However, Plaintiff indicates in his June 22, 2014 submissions that he was told Wexford would not cover the expenses to send Plaintiff out for treatment. The Court previously noted, that the ARB did not rejected that portion of his grievance on procedural grounds and, as such, Wexford cannot rely on the procedural defect that Plaintiff did not submit the June 22, 2014 portion of the grievance at the prison level. Thus, the Court finds that the portion of the grievance which was dated June 22, 2014, and submitted with Plaintiff's May 19 grievance to the ARB properly provides notice of

Wexford's involvement in Plaintiff's treatment and exhausted Plaintiff's claims against Wexford.  Wexford's motion for summary judgment is **DENIED**.

## CONCLUSION

Based on the above analysis, the Court **DENIES** Defendants' motion for summary judgment.

**IT IS SO ORDERED.**
DATED: June 5, 2017

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**Chief Judge**
**United States District Court**