CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

**SOCIAL SECURITY ADMINISTRATION**

Office of Hearings Operations
200 N Broadway, Ste 900
St Louis, MO  63102-2753

Date: December 19, 2018

Gerry A. Armbruster
2005 14th St.
Granite City, IL  62040

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

**Appeals Council**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Gerry A. Armbruster ⬛⬛⬛⬛⬛⬛

## What Else You May Send Us

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

## How An Appeal Works

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

## The Appeals Council May Review My Decision On Its Own

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

## When There Is No Appeals Council Review

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

## New Application

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. If you disagree with my decision, you should file an appeal within 60 days.

## If You Have Any Questions

We invite you to visit our website located at www.socialsecurity.gov to find answers to general

Form HA-L76-OP2 (03-2010)

P002478

Gerry A. Armbruster ████████████                                    Page 3 of 3

questions about social security.  You may also call (800) 772-1213 with questions.  If you are
deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office.  Please
have this notice and decision with you.  The telephone number of the local office that serves your
area is (877) 700-4849.  Its address is:

> Social Security Admin
> 650 Missouri Ave
> Room 104 Federal Bldg
> E St Louis, IL  62201-2995

> Joseph L. Heimann
> Administrative Law Judge

Enclosures:
Decision Rationale
Form HA-L39 (Exhibit List)


cc:     Dawna M. Hale
        Kassin & Carrow, LLC
        PO Box 425
        Edwardsville, IL  62025

Form HA-L76-OP2 (03-2010)

P002479

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

## SOCIAL SECURITY ADMINISTRATION
### Office of Hearings Operations

## DECISION

**IN THE CASE OF**                                    **CLAIM FOR**

Gerry A. Armbruster                                   Supplemental Security Income
_____
(Claimant)
                                                      ▉▉▉▉▉▉▉▉
_____                             _____
(Wage Earner)                                         (Social Security Number)

### JURISDICTION AND PROCEDURAL HISTORY

On October 8, 2014, the claimant filed an application for supplemental security income, alleging disability beginning May 1, 2014. The claim was denied initially on June 4, 2015, and upon reconsideration on September 10, 2015. Thereafter, the claimant filed a written request for hearing on November 6, 2015 (20 CFR 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on September 5, 2018, in St. Louis, MO. Amanda Armstrong, an impartial vocational expert, also testified at the hearing. The claimant is represented by Dawna M. Hale, an attorney.

The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. I find that the requirements of 20 CFR 416.1435(b) are satisfied and admit this evidence into the record (Exhibit 18E – 19E and 13F – 14F).

### ISSUES

The issue is whether the claimant is disabled (Social Security Act, section 1614(a)(3)(A)). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), I have considered the complete medical history consistent with 20 CFR 416.912.

After careful consideration of all the evidence, I conclude the claimant has not been under a disability within the meaning of the Social Security Act since October 8, 2014, the date the application was filed.

P002480

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
Gerry A. Armbruster                                                                    Page 2 of 10

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.922; Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

P002481

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
Gerry A. Armbruster                                                          Page 3 of 10

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), I must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912 and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1.   The claimant has not engaged in substantial gainful activity since October 8, 2014, the application date (20 CFR 416.971 *et seq.*).**

The claimant's earnings record indicated no earnings since his alleged onset date (Exhibits 9D – 12D). The claimant testified he was incarcerated subsequent to his alleged onset date, from August 27, 2015 to February 27, 2018. His job in jail was working in the car wash. This work does not represent substantial gainful activity (20 CFR 416.974).

**2.   The claimant has the following severe impairment: cervical spine degenerative disc disease (20 CFR 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities (SSR 85-28).

The claimant was also diagnosed with hypertension and mental impairments.   An impairment is not severe if it is only a slight abnormality that cannot be reasonably expected to result in any more than minimal limitation in the claimant's ability to perform basic work-related activities. Further, an impairment must last, or be expected to last, for at least 12 continuous months.

P002482

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
Gerry A. Armbruster ███████████                                          Page 4 of 10

The claimant has a history of hypertension that is treated, stable, and well controlled with compliant prescribed medication with no evidence of end organ dysfunction (Exhibits 7F and 11F),

The claimant was diagnosed a polysubstance use disorder with related depression that has been in remission during the relevant period of alleged disability. He was also diagnosed with an adjustment disorder and anti-social personality traits (Exhibits 6F and 9F). The claimant's girlfriend reported the claimant is able to easily make friends. The claimant is able to get along with girlfriend and family, attend church, shop, and respond appropriately socially during medical appointments (Exhibit 7E). Mental status examinations have been unremarkable with the claimant fully oriented with no evidence of thought disorder with intact memory, attention, insight, reasoning, and judgment (Exhibits 6F/3-4, 7F/14 and 18, 8F/9, 9F/4-5, 10F/3, 12F/109, and 13F/3). The condition of the claimant's mental status during the relevant period of alleged disability has not deteriorated to such an extent that he needed psychiatric intervention at an emergency room or inpatient psychiatric hospitalization. The claimant does not seek formal mental health treatment and does not require prescribed psychotropic medication. In summary, the claimant's allegations of chronic mental symptoms or significant limitations are not supported by the clinical signs and findings on mental status examination (Exhibits 6F and 9F).

Little weight is given to the opinion of the state agency medical consultants, M. W. DiFonso, Psy.D. and L. Kravitz, Psy.D., who determined the claimant was restricted to simple, routine tasks (Exhibits 1A and 3A). The opinions of the non-examining sources can be given weight only insofar as it is supported by the objective evidence as a whole, including new evidence received after the opinion was rendered. The opinions are inconsistent with the mental health treatment records, paucity of formal mental health treatment and prescribed psychotropic medication, and unsupported by the normal mental status examination findings noted above (20 CFR 416.927(e)).

The objective evidence of record, when considered as a whole, does not establish that the claimant has a "severe" medically determinable and diagnosed mental impairment.     The claimant's mental impairments do not impose significant, or more than mild, mental limitations. The claimant has no more than mild, if any, restriction in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. There is no evidence of serious deterioration of personal hygiene habits, daily activities, interests, effective intelligence, reality contact, thought processes, memory, mood, affect, attention span, insight, judgment, behavior patterns, or motor activity due to any mental disorder. The claimant's ability to think, understand, remember, communicate, concentrate, get along with other people, and handle work stress do not appear to be significantly, or more than mildly, impaired.

The claimant's hypertension, diagnosed mental impairments, and all other documented impairments diagnosed but not mentioned in the severe impairments above are non-severe. They represent minor or acute illnesses or injuries resulting in no significant long-term functional limitations. These conditions have no more than a minimal effect on the claimant's ability to engage in basic work-related activities (20 CFR 416.921).

See Next Page

Gerry A. Armbruster                                                          Page 5 of 10

**3.   The claimant does not have an impairment or combination of impairments that meets
or medically equals the severity of one of the listed impairments (20 CFR Part 404, Subpart
P, Appendix 1, Part A) (20 CFR 416.920(d), 416.925 and 416.926).**

The claimant's degenerative disc disease does not satisfy the criteria of the medical listing for
disorders of the spine, because there is no objective evidence of nerve root compression with
associated signs of neurological-anatomic distribution of pain, muscle atrophy, motor loss
accompanied by sensory or reflex loss, spinal arachnoiditis, or stenosis resulting in
pseudoclaudication (20 CFR Part 404, Subpart P, Appendix 1, Part A, section 1.04).

**4.   After careful consideration of the entire record, I find that the claimant has the
residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except
frequent pushing, pulling, handling, or fingering with the bilateral upper extremities; no
climbing ladders, ropes, or scaffolds; and occasional climbing ramps and stairs, balancing,
stooping, kneeling, crouching, or crawling.**

In making this finding, I have considered all symptoms and the extent to which these symptoms
can reasonably be accepted as consistent with the objective medical evidence and other evidence,
based on the requirements of 20 CFR 416.929 and SSR 16-3p. I have also considered opinion
evidence in accordance with the requirements of 20 CFR 416.927.

In considering the claimant's symptoms, I must follow a two-step process in which it must first
be determined whether there is an underlying medically determinable physical or mental
impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or
laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's
pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected
to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity,
persistence, and limiting effects of the claimant's symptoms to determine the extent to which
they limit the claimant's functional limitations. For this purpose, whenever statements about the
intensity, persistence, or functionally limiting effects of pain or other symptoms are not
substantiated by objective medical evidence, I must consider other evidence in the record to
determine if the claimant's symptoms limit the ability to do work-related activities.

After careful consideration of the evidence, I find that the claimant's medically determinable
impairments could reasonably be expected to cause the alleged symptoms; however, the
claimant's statements concerning the intensity, persistence, and limiting effects of these
symptoms are not entirely consistent or supported by the evidence of record for the reasons
explained in this decision.

The claimant reported prescribed medication consisted of ibuprofen, Norvasc, Prilosec,
hydroclorothiazide, and Gabapentin (Exhibit 16E). The claimant testified in substance at the
scheduled hearing that he lived with his parents. He alleged disability due to a spinal cord injury
with pain into his neck, shoulders, arms, and hands, finger numbness, and grip weakness. He

See Next Page

alleged difficulty opening jars and using silverware. The claimant also alleged difficulty walking.

The medical evidence of record demonstrates the claimant underwent surgical cervical anterior decompression, discectomy, and fusion at C5-6 on September 26, 2014 for diagnosed herniated cervical disc with spondylosis and myelopathy (Exhibit 1F). Subsequent to surgery the claimant complained of arm and hand pain and intermittent gait problems (Exhibit 4F).

Kristina Naseer, M.D., examined the claimant on March 18, 2015. The claimant complained of difficulty ambulating and residual neck pain radiating into his arms. Physical examination revealed a normal gait with ability to toe and heel walk. The claimant exhibited decreased sensation in nondermatomal distribution in his hands bilaterally. The claimant was diagnosed with cervical radiculopathy and myelomalacia. The examining physician opined no further surgery, recommended medication management, and opined the claimant was able to work despite his myomalacia (Exhibit 10F).

Gregory J. Bailey, M.D., the claimant's treating surgeon, reported on March 26, 2015 that he performed surgery on the claimant for cervical spine cord compression in September 2014. Follow-up examinations for complaints of residual symptoms were treated with prescribed Elavil (Exhibit 5F).

Jowe Hsieh, M.D., a primary care physician, examined the claimant on March 30 and May 14, 2015. Physical examinations showed some neck stiffness with full range of motion with normal muscle strength and tone. The claimant had normal gait and station with no neurological deficits (Exhibit 7F).

Adrian D. Feinerman, M.D., performed an internal medicine consultative examination of the claimant on May 26, 2015. The claimant reported balance difficulties, but denied fine or gross manipulation problems. Physical examination showed an independent, but ataxic gait. He was unable to tandem walk and had some difficulty standing on his toes or heels. Musculoskeletal examination revealed no evidence of extremity motor muscle or grip weakness, no joint or spine range of motion limitation, no inflammatory signs, and no neurological deficits. The claimant exhibited normal fine and gross manipulation. The claimant was diagnosed with cervical spinal cord compression with ataxia. The examining physician opined no specific physical limitations (Exhibit 8F).

Illinois Department of Corrections medical treatment records indicate treatment from October 9, 2015. Physical examinations on this date was normal. The claimant complained of neck, shoulder, back, and hand pain on April 25, 2016 that was treated with ibuprofen. He complained of neck pain on July 25, 2016, September 1, 2016, and March 1, 2017 that was treated with ibuprofen. The claimant complained of back pain with difficulty ambulating on September 11, 2017. During the claimant's incarceration through February 2018, he was seen for intermittent complaints of neck pain with physical examinations showing no significant clinical findings (Exhibit 12F).

P002485

The claimant reestablished primary care with Dr. Hsieh and was examined on March 14, 2018.
Examinations on March 14 and September 27, 2018 showed the claimant had normal gait and
station with normal musculoskeletal and neurological physical examination findings (Exhibits
11F and 13F).

Charles Mannis, M.D., performed a post-hearing orthopedic consultative examination on
October 29, 2018.  Physical examination showed a somewhat ataxic gait.  The claimant had full
cervical spine, but slightly limited shoulder range of motion.  He had intact finger range of
motion and dexterity with diminished bilateral grip and lower extremity strength with no more
than fair effort.  There was no evidence of atrophy, inflammatory signs, or distinct, concrete
evidence of neurological deficits.  The claimant was diagnosed with status post cervical
discectomy and fusion (Exhibit 14F).

The claimant's allegation that his impairments, either singly or in combination, produce
disabling symptoms and limitations is not consistent with the objective evidence of record.  I find
the alleged intensity, persistence, duration, and impact on functioning are unsupported by the
totality of the evidence outlined above.  To the degree I find the claimant's allegations consistent
and supported by the evidence, it is reflected in the above residual functional capacity.

Diagnostic findings document March 16, 2015 post-surgical cervical spine MRI scan showing
C5-6 discectomy and fusion with T2 hyperintense associated myelomalacia and degenerative
changes at C6-7 (Exhibit 4F/14).  Physical examination findings similarly failed to corroborate
the claimant's subjective allegations.  For example, clinicians typically documented findings
within normal limits throughout the relevant period but for intermittent episodes of ataxic gait
(Exhibits 8F and 14F).  Generally, however, clinicians found the claimant has an independent,
normal gait and station.  There is no evidence of significant joint or spine abnormality or range
of motion limitation.  There is no objective evidence of muscle atrophy, spasm, or persistent
motor muscle weakness; bowel or bladder dysfunction; chronic neurological deficits (i.e., reflex,
motor, or sensory loss); or inflammatory signs (heat, redness, swelling, etc.) (e.g., Exhibits 7F/14
and 18-19, 8F/7-8, 10F/3, 11F/4, 12F/40 and 44, 13F/4, and 14F/2-3).  While the claimant has
acute abnormalities, the pattern of objective physical examination and diagnostic findings in the
medical evidence does not support the intensity of symptoms or resultant limitations alleged by
the claimant.

I have also considered several other factors in assessing the consistency of the claimant's
allegations of disability.  The evidence indicates the claimant's physical impairments are treated,
stable, and generally controlled with prescribed medication with no evidence in the treatment
records of significant adverse side effects.  The lack of strong prescription pain medication is
inconsistent with complaints of disabling pain (Exhibit 16E and 13F).  There is no evidence the
claimant requires the use of prescribed assistive devices.  Furthermore, subsequent to surgery,
the claimant has not required physical or pain management therapy.  The claimant's limited
course of treatment subsequent to neck surgery suggests the claimant's symptoms are not as
intense and limiting as alleged.

The claimant's inconsistent effort during post-hearing consultative examination does not enhance
his allegation of disability (Exhibit 14F).  Although the examining orthopedist recommended a

P002486

further post-hearing neurological consultative examination, given the claimant's failure to give good effort during orthopedic examination, I see little point in ordering another examination. Further, I find the evidence of record is complete enough to make a determination as to the ultimate finding of disability (Exhibit 14F).

The claimant described significantly limited daily activities that are not consistent with the relatively stable and benign objective medical findings (Exhibit 8E). Moreover, the claimant's girlfriend described the claimant's daily activities as significantly greater than reported by the claimant and that are inconsistent with the severity of symptoms and degree of limitation alleged by the claimant. It was reported the claimant is able to essentially function independently, provide care for his own personal needs, prepare meals, perform light household chores (dishes, sweep, etc.), handle money, shop, attend church, visit his parents, and drive (Exhibit 7E). The claimant testified that during his incarceration he worked in the jail car wash.

The claimant has a history of cervical spine impairment with status post surgical decompression and fusion with residual symptoms of neck pain, upper extremity numbness, and intermittent ataxic gait. There is no evidence subsequent to surgery of cord or nerve root compression. Although the claimant's allegations of disability are not consistent with the objective medical evidence of record or supported by the evidence as a whole, I find the claimant's impairments require a reduction of his residual functional capacity. Based on the totality of the evidence, the claimant's symptoms of neck pain, upper extremity numbness, and intermittent ataxia from his diagnosed cervical spine impairment impose physical exertional limitations that would prevent the claimant from sustaining medium or greater work with limited ability to climb or bend. The claimant's upper extremity symptoms further limit his ability to push, pull, or perform gross hand or fine finger manipulation tasks with his upper extremities constantly.

I give significant weight to the opinions of the state agency physicians, J. Pardo, M.D. and R. Alley, M.D., who determined the claimant had the capacity to sustain light exertional level work with limited pushing or pulling with the bilateral upper extremities and non-exertional postural and manipulative limitations (Exhibit 1A – 3A). The opinions of the non-examining sources were considered and weighed as those of qualified physicians. I accept the opinions of the non-examining state agency medical consultants as consistent with the objective medical evidence of record; supported by the generally unremarkable physical examination findings of the examining internist, Dr. Feinerman (Exhibit 8F), and treating primary care physician, Dr. Hsieh (Exhibit 13F); and corroborated by the department of corrections medical treatment records (Exhibit 12F). The undersigned; however, rejects that part of the state agency medical consultants' assessment pertaining to the non-exertional environmental limitations of avoiding extreme temperatures and hazards as uncorroborated and unsupported by the objective medical evidence of record (20 CFR 416.927(e)).

Little weight is afforded the medical source statement of the examining source, Dr. Mannis, who opined the claimant was limited in substance to sedentary exertional level work with a sit/stand option with a hand held assistive device and non-exertional postural, manipulative, and environmental limitations (Exhibit 14F/5-10). Dr. Mannis reported the medical source statement was of limited value because it was based primarily on the claimant's subjective complaints as opposed to actual objective physical findings (Exhibit 14F/3). The October 29, 2018 physical

P002487

medical source statement by the one-time examining physician is deficient because it does not articulate an objective medical basis for the limitations indicated and is inconsistent with the claimant's history of conservative treatment since neck surgery and the unremarkable physical examination findings of Dr. Feinerman and Dr. Hsieh (Exhibits 8F, 10F, and 13F). Further, the opinion is inconsistent with the unremarkable department of corrections medical treatment records (Exhibit 12F) and is unsupported by the evidence as a whole, including the claimant's daily activities (Exhibit 7E).

No weight is given to the blanket statement of disability by Dr. Bailey, indicating the claimant "can not function in a normal workplace" (Exhibit 5F/3). Conclusory statements that a claimant is disabled are not medical opinions, but administrative findings dispositive of a case, requiring familiarity with the regulations and legal standards set forth therein. Such issues are reserved to the Commissioner to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner cannot be given controlling weight, but must be carefully considered to determine the extent to which they are supported and consistent with the record as a whole. Dr. Bailey's conclusory statement of disability is contradicted by Dr. Naseer's statement, "I am sure he will be able to hold consistent job with his myomalacia" (Exhibit 10F/3), is inconsistent with the claimant's history of conservative treatment since recovery from surgery, and unsupported by the generally unremarkable physical examination findings noted above  (20 CFR 416.927(d)).

The objective medical evidence of record supports a finding that the claimant has impairments that impose symptoms and limitations that preclude the claimant from performing more than a significant limited range of light exertional level work activity with non-exertional postural and manipulative limitations. Weighing all relevant factors, I conclude that the claimant's subjective complaints do not warrant any further limitation.

**5.    The claimant has no past relevant work (20 CFR 416.965).**

**6.    The claimant is 45 years old, born on December 4, 1973, which is defined as a younger individual age 18–49 (20 CFR 416.963).**

**7.    The claimant has a limited education and is able to communicate in English (20 CFR 416.964).**

The claimant reported 11 years of formal education.

**8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).**

**9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).**

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the medical-vocational guidelines (20 CFR Part 404, Subpart P, Appendix 2, Part A).

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Gerry A. Armbruster █████████████                                                    Page 10 of 10

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.17. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative unskilled (SVP 2), light occupations such as furniture rental clerk, Dictionary of Occupational Titles (DOT) Job # 295.357-018 or photocopy machine operator, DOT Job # 207.685-014. The vocational expert stated that the claimant could also perform representative unskilled (SVP 2), sedentary occupations such as addressing clerk, DOT Job # 209.587-010 or document preparer, DOT Job # 249.587-018. The vocational expert testified there were approximately 50,000 furniture rental clerk, 16,000 photocopy machine operator, 8000 addressing clerk, and 40,000 document preparer jobs in the national economy.

I have determined that the vocational expert's testimony is consistent with the information contained in the DOT (SSR 00-4p).

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**10.  The claimant has not been under a disability, as defined in the Social Security Act, since October 8, 2014, the date the application was filed (20 CFR 416.920(g)).**

**DECISION**

Based on the application for supplemental security income filed on October 8, 2014, the claimant is not disabled (Social Security Act, section 1614(a)(3)(A)).

/s/ *Joseph L. Heimann*
_____
Joseph L. Heimann
Administrative Law Judge

December 19, 2018
_____
Date

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1A | Disability Determination Explanation - Physical/Mental RFCs signed by DDS Dr | | 06/03/2015 | 14 |
| HO 2A | Disability Determination Transmittal - Initial Title XVI | | 06/04/2015 | 1 |
| HO 3A | Disability Determination Explanation - Physical/Mental RFCs signed by DDS Dr | | 09/10/2015 | 15 |
| HO 4A | Disability Determination Transmittal - Reconsideration Title XVI | | 09/10/2015 | 1 |

## Jurisdictional Documents/Notices

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1B | Appointment of Representative | | 10/08/2014 | 1 |
| HO 2B | Representative Fee Agreement | | 10/08/2014 | 1 |
| HO 3B | T16 Notice of Disapproved Claim | | 06/04/2015 | 4 |
| HO 4B | Personal Decision Notice | | 06/04/2015 | 1 |
| HO 5B | Authorized Representative Cover Letter | | 06/04/2015 | 1 |
| HO 6B | Request for Reconsideration | | 06/26/2015 | 3 |
| HO 7B | T16 Disability Reconsideration Notice | | 09/10/2015 | 6 |
| HO 8B | Request for Hearing by ALJ | | 11/09/2015 | 3 |
| HO 9B | Request for Hearing Acknowledgement Letter | | 01/28/2016 | 12 |

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Gerry A. Armbruster ▮▮▮▮▮▮                                             Page 2 of 5

| HO 10B | Withdrawal/Revocation of Representation | | 02/11/2016 | 1 |
| HO 11B | Claimant Correspondence - right to representation | | 02/18/2016 | 7 |
| HO 12B | Hearing Notice | | 02/22/2018 | 14 |
| HO 13B | Report of Contact | | 03/06/2018 | 1 |
| HO 14B | Representative Fee Agreement | | 03/19/2018 | 1 |
| HO 15B | Appointment of Representative | | 03/19/2018 | 1 |
| HO 16B | Authorized Representative Cover Letter | | 03/27/2018 | 1 |
| HO 17B | Claimant's Change of Address Notification | | 03/27/2018 | 1 |
| HO 18B | Request for Postponement | | | 1 |
| HO 19B | Transfer Request for Hearing | | 04/27/2018 | 5 |
| HO 20B | Hearing Notice | | 05/21/2018 | 29 |
| HO 21B | Acknowledge Notice of Hearing | | 06/25/2018 | 2 |
| HO 22B | Notice Of Hearing Reminder | | 08/22/2018 | 6 |
| HO 23B | Report of Contact - Claimant Phone Number | Subsequent to hearing | 09/07/2018 | 1 |

## Non-Disability Development

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1D | Application for Supplemental Security Income Benefits | | 10/08/2014 | 6 |
| HO 2D | WHAT - Work History Assistant Tool | | 02/06/2017 | 10 |
| HO 3D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 02/06/2017 | 1 |
| HO 4D | DISCO DIB Insured Status Report | | 02/06/2017 | 2 |
| HO 5D | DIBWIZ | | 02/06/2017 | 3 |

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Gerry A. Armbruster                                                                          Page 3 of 5

| HO 6D | Certified Earnings Records | 02/06/2017 | 2 |
| HO 7D | Detailed Earnings Query | 02/08/2017 | 9 |
| HO 8D | Summary Earnings Query | 02/08/2017 | 1 |
| HO 9D | Certified Earnings Records | 08/30/2018 | 1 |
| HO 10D | Detailed Earnings Query | 08/30/2018 | 8 |
| HO 11D | Summary Earnings Query | 08/30/2018 | 1 |
| HO 12D | New Hire, Quarter Wage, Unemployment Query (NDNH) | 08/30/2018 | 1 |

### Disability Related Development

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1E | Disability Report - Field Office | | SSA | to 12/05/2014 | 3 |
| HO 2E | Disability Report - Adult | | Claimant | to 12/08/2014 | 8 |
| HO 3E | Work History Report | | Claimant | to 01/30/2015 | 6 |
| HO 4E | Function Report - Adult | | Claimant | to 01/30/2015 | 10 |
| HO 5E | Disability Report - Field Office | | SSA | to 06/29/2015 | 2 |
| HO 6E | Disability Report - Appeals | | Claimant | to 06/29/2015 | 7 |
| HO 7E | 3rd Party Function Report - Adult | | Glenda M Parks | to 07/15/2015 | 10 |
| HO 8E | Function Report - Adult | | Claimant | to 07/15/2015 | 8 |
| HO 9E | Disability Report - Appeals | | Claimant | to 11/09/2015 | 6 |

HA-L39 (03-2007)

P002492

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Gerry A. Armbruster ▮▮▮▮▮▮▮                                      Page 4 of 5

| | | | | |
|---|---|---|---|---|
| HO 10E | Disability Report - Field Office | | SSA | 2 |
| | | | to 11/09/2015 | |
| HO 11E | Exhibit List-CD to Representative or Claimant Form # HA-L56 (03-200) | | ODAR | 11 |
| | | | to 02/08/2017 | |
| HO 12E | Statement of Claimant or Other Person | | Claimant | 1 |
| | | | to 12/19/2017 | |
| HO 13E | Resume of Vocational Expert | | SPINELLI | 2 |
| | | | to 04/05/2018 | |
| HO 14E | Recent Medical Treatment | | Claimant | 2 |
| | | | to 05/23/2018 | |
| HO 15E | Attorney/Representative -Supplied Evidence | | Attorney | 1 |
| | | | to 06/06/2018 | |
| HO 16E | Medications | | Claimant | 1 |
| | | | to 07/03/2018 | |
| HO 17E | Resume of Vocational Expert | | Amanda S. Armstrong | 5 |
| | | | to 08/14/2018 | |
| HO 18E | Proffer Correspondence | Subsequent to hearing | Attorney | 3 |
| | | | to 11/05/2018 | |
| HO 19E | Response to Proffer Correspondence | Subsequent to hearing | Attorney | 3 |
| | | | to 11/15/2018 | |

## Medical Records

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1F | Hospital Records | | SSM St Mary's Health Center | 09/26/2014 to 10/20/2014 | 14 |
| HO 2F | Outpatient Hospital Records | | Gateway Regional Medical Center | 09/26/2014 to 01/04/2015 | 19 |
| HO 3F | Medical Source - No MER Available | | Bailey, Gregory J MD | to 01/27/2015 | 3 |

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Gerry A. Armbruster [REDACTED]                                               Page 5 of 5

| | | | | |
|---|---|---|---|---|
| HO 4F | Office Treatment Records | | Bailey, Gregory J MD | 10/01/2014 to 03/19/2015 | 24 |
| HO 5F | Treating Source Statement | | Bailey, Gregory J MD | 03/26/2015 to 03/26/2015 | 3 |
| HO 6F | CE Psychology | | Deppe, Harry PhD | 04/28/2015 to 04/28/2015 | 5 |
| HO 7F | Office Treatment Records | | Hsieh, Jowe MD | 01/21/2015 to 05/14/2015 | 19 |
| HO 8F | CE Internal Medicine | | Feinerman, Adrian D MD | 05/26/2015 to 05/26/2015 | 12 |
| HO 9F | Progress Notes | | Chestnut Health System | 01/15/2015 to 01/20/2015 | 12 |
| HO 10F | Office Treatment Records | | Kristina Naseer, M.D. | to 03/18/2015 | 13 |
| HO 11F | Office Treatment Records | | Jowe Hsieh, M.D. | to 03/14/2018 | 5 |
| HO 12F | Prison Records | Subsequent to hearing | Taylorville Correctional Center | 04/13/2014 to 02/07/2018 | 243 |
| HO 13F | Office Treatment Records | Subsequent to hearing | Jose Hsieh, M.D. | to 09/27/2018 | 4 |
| HO 14F | CE Orthopedic | Subsequent to hearing | Charles Mannis, M.D. | to 10/29/2018 | 13 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER



**DEPARTMENT OF HUMAN SERVICES**
**BUREAU OF DISABILITY DETERMINATION SERVICES**
P.O. Box 19251 ♦ Springfield, Illinois 62794-9851



A3078635

VENDOR NUMBER-FEIN/SSN: 452215716 TYPE CODE: 01   AUTHORIZATION DATE: 05/15/15

| PAY TO: | CLIENT INFORMATION: |
|---|---|
| F LIKE FRANK PC | GERRY A ARMBRUSTER |
| Feinerman Family Practice | 5 EASTGATE |
| 501 W Illinois   PO Box 37 | APT A |
| Steeleville IL 62288 | PONTOON BEACH IL 62040 |

Applicant:

OFFICE:
Adrian D Feinerman MD
Gateway Medical Office Bldg
2044 Madison Ave  Ste 21
Elevator B
Granite City IL 62040

Appt:   05/26/15              Time:  03:20 P
Type Service:   56

| Service Code | Description | | Amt Auth | Change Amt |
|---|---|---|---|---|
| 01800 | Internist | | 125.00 | |
| | | TOTAL: | 125.00 | |

SELLERS CERTIFICATION: I hereby certify that the services listed have met all the required standards set forth in the purchasing contract and are proper charges against the State of Illinois and that payment has not been received. Please note your signature also certifies that the information given herein by the provider is true, accurate and complete, that the charges considered reasonable by the Department of Human Services will constitute the full and complete charge. Therefore, that the provider will not accept additional payment from the client or any person or source and that insurance or other payments for this service are considered as deductions from the authorized amount certification also signifies full compliance with Title VI of the Civil Rights Act of 1964 and Title V of the Rehabilitation Act of 1973 forbidding discrimination for reasons of handicap, sex, age, religion, race, color or national origin. Payment of interest may be available if the State fails to comply with the Illinois Prompt Payment Act, ILL Rev, Stat. Ch27, par 132.401).

VENDOR SIGNATURE                              DATE   5/26/15

Vendor instructions: Provide the services listed above. Please sign, date and return one of the two copies of this form to the Department of Human Services address shown at the top of this form. Keep the other copy for your records.

APPROVED FOR PAYMENT
                                          13

Adjudicator                          Date

CANCELLATION

Cancellation Reason (please circle)
1.   Exam not Performed
2.   Incorrectly Authorized
3.   Client Failed to keep appointment
4.   Vendor did not bill prior to FY cut-off

Adjudicator                          Date

*AA6413*          *1184664956*

C:10-924
DHA
E13W

VENDOR/PAYMENT

Claim#: AA6413

P002495

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

**FEINERMAN FAMILY PRACTICE**
501 West Illinois Street/P.O. Box 37
Steeleville, Illinois 62288
Telephone(618)965-9266
Fax (618) 965-9508

ADRIAN FEINERMAN, MD

Internal Medicine

Illinois Department of Human Services
Bureau of Disability Determination Services
Post Office Box 19250
Springfield, Illinois   62794-9250

Adjudicator: Iris R.      C: 10 – 924

Exam Date:       May 26, 2015

RE: Gerry Armbruster
Claim# AA6413
SS# XXX-XX-5939
41-year-old Caucasian male

      Gerry Armbruster has completed 11 years of education and worked as a carpenter until 2011 . This history was obtained from the claimant, who is felt to be reliable.   He was informed of the purpose of this examination and my role as a consultative examiner to provide objective information to the Bureau of Disability Determination Services to assist in the process to evaluate their claim of disability.   The claimant understands that this information will be sent confidentially to the Bureau of Disability Determination Services and said information used solely for the purpose of evaluating the claimant's allegation of disability.   I explained to the claimant that this interview and examination does not constitute a doctor-patient relationship or a treating relationship.   The claimant was informed that treatment recommendations are not part of this process and was encouraged to follow-up with their treating physicians.   The claimant acknowledged understanding of the foregoing.

OLD RECORDS:  Old records reviewed were as follows:
1.   progress note dated March 26, 2015 Re: weakness in the upper and lower extremities due to spinal cord compression

I examined Gerry Armbruster at my Granite City office on May 26, 2015 at which time his complaints were:
1. Trouble walking

DATE OF ONSET/PRESENT ILLNESS. This claimant has had trouble walking since May 2014 secondary to pressure on the spinal cord in his neck. He had a cervical decompression in September 2014. He complains of wrist pain since May 2014 secondary to his neck problem. He complains of low back pain since May 2014 from unknown cause. He states he can walk 50 feet and stand for 10 min. . He loses his balance if he squats or bends. He's able to sit and do fine and gross manipulation without difficulty.

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

RE: Gerry Armbruster
Claim# AA6413
SS# XXX-XX-5939

He has a history of hypertension for the past year without end organ damage.

He denies shortness of breath related to pulmonary disease, cardiac related chest pain or seizures.

PAST HISTORY:
Past treating sources: Dr.Hsieh, Granite City, Illinois
Past hospitalizations: see present illness
E.R. visits: see present illness
Medical illnesses: see present illness
Surgeries: see present illness, gunshot wound to the legs
Injuries: gunshot wound to the legs

CURRENT MEDICATIONS:
1. Buspirone
2. diclofenac
3. baclofen
4. amitriptyline
5. amlodipine
6. Piroxicam
7. gabapentin
8. omeprazole

FAMILY HISTORY:
Mother-60 years old unknown medical problems
Father- 65 years old with heart disease

SOCIAL HISTORY:
Marital status: divorced
Tobacco: one pack per day since October 2014
Alcohol: none
Over-the-counter medications: ibuprofen
Illicit drug: none
ALLERGIES: none

REVIEW OF SYSTEMS:

| | NEGATIVE | POSITIVE | COMMENTS |
|---|---|---|---|
| 1. General | | | |
| | • | Weight change | increased 20 # in the past year |
| | • | Fatigue | |
| | • Fever/chills | | |
| | • Trouble sleeping | | |
| | • Other | | |

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

RE: Gerry Armbruster
Claim# AA6413
SS# XXX-XX-5939

2. Skin
   - Rash
   -                    Itching
   -                    Dryness
   - Nail change
   - Skin cancer
   - Hives
   - Other

3. Neurological
   -                    Dizziness
   - Fainting
   - Seizures
   - Localized weakness
   -                    Numbness
   -                    Tingling/burning
   - Tremors
   - Headache
   - Other

4. HEENT
   - Visual problems
   - Ear ache
   - Nose bleed
   - Tinnitus
   -                    Decreased hearing
   - Glaucoma
   - Cataracts
   -                    Hayfever
   -                    Sinusitis
   -                    Sore throat
   -                    Hoarseness
   - Other

5. Endocrine
   - Temperature intolerance
   - Diabetes
   - Thyroid disease
   - Other

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

RE: Gerry Armbruster
Claim# AA6413
SS# XXX-XX-5939

6. Respiratory
   - Chronic cough
   - Hemoptysis
   - Shortness of breath
   - Pneumonia
   - Cancer
   - Other

7. Cardiovascular
   - Chest pain
   - Palpitations
   -                       Hypertension
   - Heart attack
   - Heart surgery
   - Peripheral vascular disease
   - Orthopnea
   - Paroxysmal nocturnal dyspnea
   - Other

8. Gastrointestinal
   -                       Dysphagia
   -                       Heartburn
   - Nausea/vomiting
   - Bleeding
   - Constipation
   - Diarrhea
   - Hepatitis
   - Cancer
   - Other

9. Genitourinary
   - Dysuria
   - Hematuria
   - Urgency
   - Frequency
   - Incontinence
   - Kidney stones
   - Other

10. Musculoskeletal
   -                       Joint pain
   -                       Joint surgery
   -                       Neck pain
   -                       Back pain
   - Fractures
   - Other

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

RE: Gerry Armbruster
Claim# AA6413
SS# XXX-XX-5939

11. Hematological
- Anemia
- Easy bruising
- Cancer
- Other

12. Psychiatric
- Anxiety/depression
  Suicidal thoughts
- Hallucinations
- Other

PHYSICAL EXAM:

General:
Sex:   male
Skin color: Caucasian
Eye color: blue
Distinguishing marks:
    1) Tattoos: none
    2) Moles:
    3) Scars: neck, legs
Hygiene:   Adequate
Attire:   Appropriate.
Behavior during examination:   Appropriate.

Vitals:
Height: 5'5" without shoes
Weight: 208 pounds without shoes
Blood pressure: 150/100
Pulse: 110
Respirations: 16
P O2: 97%
Dominant Hand; right

Skin:   No lesions, rashes or dermatologic abnormalities.

Head:   Normocephalic and atraumatic.

Ears:   Both external auditory canals are patent and both tympanic membranes are intact.   There is no evidence of inflammation or perforation

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

RE: Gerry Armbruster
Claim# AA6413
SS# XXX-XX-5939

Eyes:  Sclerae clear, no icterus.  Conjunctivae pink.  Pupils are round, equal and react to light and accommodation.  Extraocular muscles intact.  There is no nystagmus.  Fundoscopic examination is unremarkable.  Visual field are normal by confrontation.
Snellen Visual Acuity: without glasses OD 20/20 OS 20/25

Nose, Throat and Mouth:  No abnormalities.  Mucosa is pink and moist.  No lesions are seen.  Uvula is located in the midline and moves in the midline.

Neck:  Supple.  No thyromegaly or adenopathy.  There is no jugular venous distention.

Cardiovascular:  Regular rhythm.  No murmurs, gallops or rubs.  There is no cardiomegaly to percussion.  There is no hepatomegaly or peripheral edema.  Radial, femoral, dorsalis pedis, and posterior tibial pulses are intact, with no bruits.

Breast Exam:  Deferred.

Pulmonary:  Lungs are clear to auscultation and percussion.  No wheezes, rales, or rhonchi.  There is no increase in AP diameter.

Abdomen:  Soft, nontender, no organs palpable.  Bowel sounds are normoactive.  No bruits are heard.

Musculoskeletal
A) Extremities: There is no anatomic abnormality of any extremity and no evidence of redness, warmth, thickening or effusion of any joint.  There is no limitation of motion of any joint (see range of motion chart).  Grip strength is strong and equal bilaterally (see chart). There is no cyanosis or clubbing.

B) Spine:  There is no anatomic deformity of the cervical, thoracic or lumbar spine and no limitation of motion of any spinal segment (see range of motion chart).

Ambulation: He had an ataxic gait but was able to ambulate 50 feet without an assistive device.

| | None | Mild | Moderate | Severe | Unable |
|---|---|---|---|---|---|
| Getting on/off exam table | | | x | | |
| Tandem walking | | | | | x |
| Standing on toes | | | x | | |
| Standing on heels | | | x | | |
| Squatting and arising | | | x | | |
| Need/use of assistance device | x | | | | |
| Difficulty arising from a chair | | | x | | |

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

RE: Gerry Armbruster
Claim# AA6413
SS# XXX-XX-5939

Neurological:
A) Cranial nerves:  Normal.

B) Cerebellar function:  Intact. The Romberg test was negative

C) Motor:  Muscle strength is normal (5/5) throughout.   There is no spasm or atrophy.   Fine and gross manipulation are normal, including opposition of the fingers and thumb (see chart).   Claimant is able to dress and undress.

D) Sensory:  Sensory examination was unremarkable.

E) Deep tendon reflexes: Patellar and Achilles reflexes were increased and equal bilaterally.

F) Mental Status:  Claimant is oriented to person, place and time.   Appearance, behavior, memory, concentration and ability to relate are normal.

SLR is negative in both sitting and supine positions.   No pathological reflexes are present.
Conversational speech is normal and understandable.

Collaborative Tests:  None.

Diagnostic Impression:
   1.  cervical spinal cord compression with ataxia
   2.  hypertension

Summary: Claimant is able to sit, stand, hear, speak, lift, carry, handle objects, and can handle funds on own behalf. This claimant has an ataxic gait due to prolonged cervical spinal cord compression. He has had a cervical decompression. He has a history of hypertension without end organ damage.

This examination was conducted in English and lasted 28 minutes.   Upon completion of the examination, the claimant acknowledged that all medical complaints were addressed. We appreciate your referral of Gerry Armbruster for examination and evaluation.   If there is any further information that you require, please do not hesitate to contact me.

Sincerely,

Adrian D. Feinerman, MD
License Number: 036-039778
Expiration Date: 07-31-17
Enclosures: none
Re: Gerry Armbruster

P002502

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

RE: Gerry Armbruster
Claim# AA6413
SS# XXX-XX-5939

## FINE AND GROSS MANIPULATION

| Level of Difficulty | RIGHT HAND | | | | LEFT HAND | | | |
|---|---|---|---|---|---|---|---|---|
| | none | mild | moderate | severe | none | mild | moderate | Severe |
| Open door Using knob | x | | | | x | | | |
| Squeezes BP cuff bulb | x | | | | x | | | |
| Picks up coin | x | | | | x | | | |
| Picks up and holds a cup | x | | | | x | | | |
| Picks up pen | x | | | | x | | | |
| Buttons/ Unbuttons | x | | | | x | | | |
| Zip/ unzip | x | | | | x | | | |
| Ties shoelaces | x | | | | x | | | |
| Turns page | x | | | | x | | | |
| Oppose thumb & index finger | x | | | | x | | | |
| Grip strength 0-5/5 | x | | | | x | | | |
| Pinch strength 0-5/5 | x | | | | x | | | |

CHECK   DOMINANT   HAND:          RIGHT   XX          LEFT

P002503

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

RE: Gerry Armbruster
Claim# AA6413
SS# XXX-XX-5939

### NUMERICAL ENTRIES IN THE FOLLOWING TABLES REPRESENT JOINT MOVEMENT IN DEGREES

### RANGE OF MOTION IS NORMAL UNLESS OTHERWISE INDICATED

| CERVICAL | NORMALS | |
|---|---|---|
| FLEXION | 0-50 | |
| EXTENSION | 0-60 | |
| RIGHT LATERAL FLEXION | 0-45 | |
| LEFT LATERAL FLEXION | 0-45 | |
| RIGHT ROTATION | 0-80 | |
| LEFT ROTATION | 0-80 | |

| LUMBAR SPINE | NORMALS | |
|---|---|---|
| FLEXION | 0-90 | |
| EXTENSION | 0-25 | |
| LATERAL FLEXION | 0-25 | |

| HIP | NORMALS | RIGHT | LEFT |
|---|---|---|---|
| FLEXION | 0-100 | | |
| EXTENSION | 0-30 | | |
| ABDUCTION | 0-40 | | |
| ADDUCTION | 0-20 | | |
| INTERNAL ROTATION | 0-40 | | |
| EXTERNAL ROTATION | 0-50 | | |

| SHOULDER | NORMALS | RIGHT | LEFT |
|---|---|---|---|
| FLEXION(FORWARD ELEVATION) | 0-150 | | |
| ABDUCTION | 0-150 | | |
| ADDUCTION | 0-30 | | |
| INTERNAL ROTATION | 0-80 | | |
| EXTERNAL ROTATION | 0-80 | | |

| ELBOW | NORMALS | RIGHT ACTIVE | LEFT ACTIVE |
|---|---|---|---|
| FLEXION | 0-150 | | |
| SUPINATION | 0-80 | | |
| PRONATION | 0-80 | | |

P002504

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

RE: Gerry Armbruster
Claim# AA6413
SS# XXX-XX-5939

| WRIST | NORMALS | RIGHT ACTIVE | LEFT ACTIVE |
|---|---|---|---|
| DORSIFLEXION | 0-60 | | |
| PALMAR FLEXION | 0-60 | | |

| KNEE | NORMALS | RIGHT | LEFT |
|---|---|---|---|
| EXTENSION | 0 | | |
| FLEXION | 0-150 | | |

| ANKLE | NORMALS | RIGHT | LEFT |
|---|---|---|---|
| DORSIFLEXION | 0-20 | | |
| PLANTAR FLEXION | 0-40 | | |

| SUBTALAR MOTION | NORMALS | RIGHT | LEFT |
|---|---|---|---|
| INVERSION | 0-30 | | |
| EVERSION | 0-30 | | |

P002505

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

ILLINOIS DEPARTMENT OF HUMAN SERVICES
DIV OF REHAB SERVICES, DISABILITY DETERMINATION
P.O. Box 19250 • Springfield, Illinois 62794-9250

March 18, 2015

*4/28*

Harry Deppe PhD
c/o Adrian D Feinerman MD
Feinerman Family Practice
501 W Illinois St
Steeleville IL 62288

RE:   GERRY A ARMBRUSTER
      5 EASTGATE
      APT A
      PONTOON BEACH IL 62040
SS#: XXX-XX-5939
Telephone: (618) 823-8721
Alternate Telephone Number:  (000) 000-0000

Adjudicator:
IRIS R.    C:10-924
Telephone: 800-225-3607
Extension: 40628
TTY: 800 362-7754
(for persons who are deaf or speech impaired only)

          PARTIAL LIST OF ITEMS ORDERED:
          Psychologist
          Mental Status

       *For remaining items (if any), see invoice*



RQID: 1162821295AA641301        SITE:S16 DR:S
SSN:********* DOCTYPE:0002 RF:D CS:c7c

*1 1 6 2 8 2 1 2 9 5 *

C:10-924
E301                          AA6413                    CWE
                                                      (2/7/12)

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

# HARRY J. DEPPE, Ph.D.

Licensed Clinical Psychologist
Licensed in Missouri and Illinois

Hours by Appointment
Phone: (314) 375-7067
Fax:    (618) 236-7538

Memorial Healthcare Ctr.
800 E. Highway 50
O'Fallon, Illinois 62269

## PSYCHOLOGICAL EXAMINATION
HARRY J. DEPPE, Ph.D.

PATIENT'S NAME:    **Gerry A. Armbruster**
DOB:               **12/04/73**
SS#:               **XXX-XX-5939**
DATE:              **04/28/15**
ADJUDICATOR:       **Iris R.**
DDS:               **C:10-924**
CLAIM:             **AA6413**

**REASON FOR REFERRAL**: The claimant, Gerry Armbruster, a 41-year-old, divorced, Caucasian male, was referred by the Bureau of Disability Determination Services for a psychological consultation. A Patient Questionnaire was reviewed. The claimant stated that he was drove himself to this examination. The claimant appeared a fair source of information. The claimant stated that he is currently seeking disability due to "I had neck surgery."

**PERSONAL HISTORY**:

Education: The claimant stated that he completed 11th grade and was enrolled in special education. The claimant stated, "I had problems with reading." The claimant stated that he was suspended from school on one occasion for smoking; however, was never expelled from school for behavioral problems.  The claimant stated that as of this writing he has not earned a GED.

Family History and Marital History: The claimant stated that he is the second of four children and has a good relationship with his siblings and parents.  The claimant stated that he was married for ten years, has been divorced for ten years and has four children, ranging in ages from 20 to three years.  The claimant stated that his three-year-old daughter is currently in foster care.

Alcohol and Drug History: The claimant stated that he has a significant history of cocaine, crack cocaine, methamphetamine and marijuana use.  The claimant stated that

P002507

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

**Gerry A. Armbruster        Page 2        Claim #: AA6413        SS#: XXX-XX-5939**

he last used cocaine, crack cocaine and marijuana approximately three years ago and
last used methamphetamine approximately 18 years ago. The claimant stated that he
does not use alcohol and has been treated on an outpatient basis on several occasions
for polysubstance abuse.

Conduct and Legal History: The claimant stated that he has been incarcerated in the
Illinois Department of Corrections on four occasions. He stated that he has been
incarcerated for "burglary, theft, theft and burglary and battery." The claimant stated that
he has been incarcerated for approximately ten years and was last released in
September 2014. He stated that he is currently on parole through Madison County,
Illinois.

Psychiatric History: The claimant stated that he is currently not under the care of a
psychiatrist and/or a psychologist and is taking no psychotropic medications. The
claimant does have a history of outpatient treatment. The claimant stated, "When I was
using drugs, I would get really depressed, and I saw a psychiatrist for a while." The
claimant described his sleep currently as only fair due to neck pain and his appetite as
within normal limits. The claimant stated that most of his social contacts are with family
members. The claimant appears to be functioning at an approximate average to low
average level of intellectual ability. The claimant denied current suicidal and/or
homicidal ideations. The claimant stated, "When I was using drugs, I thought about
killing myself, but I don't think like that now."

Medical History: Mr. Armbruster stated that he underwent neck surgery in September
2014. The claimant stated, "I guess I had a bulging disk; I don't know what was causing
me so much pain." The claimant is currently taking no pain medications. The claimant
stated, "They won't give me any pain medicine because of my drug use in the past."
The claimant stated that he experiences neuropathy in his hands and wrists and was
prescribed gabapentin (300 mg) for his neuropathy condition. The claimant was also
diagnosed with high blood pressure and was prescribed amlodipine (5 mg) for his blood
pressure condition. The claimant is currently under the care of Dr. Hsiah for the above-
mentioned medical conditions.

## MENTAL STATUS EXAMINATION:

Mr. Armbruster was on time for this examination. He presented himself as five feet five
inches tall, weighing 205 pounds. He was wearing blue jeans and a jacket. No
distinguishing scars and/or tattoos were noted, and the claimant's grooming and
hygiene were adequate. His gait was somewhat slowed and deliberate, as he displayed
a noticeable limp; however, his posture was within normal limits.

The claimant's mood and affect appeared within normal limits, and eye contact was fair
to good. He appeared to make a fair to good effort in terms of answering questions to

**Gerry A. Armbruster     Page 3     Claim #: AA6413     SS#: XXX-XX-5939**

the best of his ability.  Receptively, he had no difficulty hearing what was said to him, and his expressive verbalizations were clear and fluent.  His facial expressions and body mannerisms were appropriate and consistent with topics discussed.  No formal thought disorders were noted, as the claimant had no difficulty staying focused, and his responses to questions and comments appeared relevant and coherent.  A delusional thought process was not noted, and the claimant denied current or past episodes of hallucinations.  He was oriented to time, place and person, as he was able to the correct day, date and time.  He was also able to give his correct home address as well as his home phone number.  His fund of general knowledge was good.  He was able to name five large cities in the United States.  He was also able to correctly identify Saddam Hussein and Martin Luther King, Jr.  When asked to describe a recent news item, the claimant stated, "There's been riots in the streets lately."  His memory for recent and/or more remote events was good.  He was able to name five Presidents of the United States, including "Obama, Bush, Bush, Clinton and Carter."  He was also able to recall his mother's maiden name, his own date of birth as well as his own social security number.  His immediate memory skills were good.  He was able to recall seven digits forward and four digits in reverse order.  His simple reasoning skills were good.  When asked how a tree and a bush were similar, the claimant stated, "They're plants."  His abstract reasoning skills were within normal limits.  When asked to interpret the proverb "let sleeping dogs lie", the claimant stated, "Just let it go."  Also, when asked to interpret the proverb "don't cry over spilt milk", the claimant stated, "Don't whine about it."  His judgment and insight were within normal limits.  The claimant stated that if he were to find an envelope in the street that was sealed, addressed and had a new stamp on it he would "put it in a mailbox."  He stated that if he were to see smoke and fire coming from the window of his neighbor's home he would "call the fire department."  His ability to perform simple calculations was good.  He was able to perform Serial 7s, making no errors.  He was also able to recall the months of the year in reverse order, making no errors.

Employment History:  The claimant stated that he is currently not employed and last worked in 2011 as a mechanic.  The claimant stated that he worked in that capacity for approximately six months and stated, "I was drug addicted back then, and I don't know why I quit or got fired; it was a long time ago."

Daily Activities:  The claimant stated that he spends his time "I help my girlfriend a little bit with housework; I watch a lot of TV and I have contact with my family."  The claimant stated that he does shop with his girlfriend.  The claimant appears capable of functioning independently in terms of bathing and dressing himself.  The claimant stated that his relationships with others are "I guess okay with my family."  His ability to complete tasks in a timely and efficient fashion appears fair to good.

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

**Gerry A. Armbruster      Page 4      Claim #: AA6413      SS#: XXX-XX-5939**

## CLINICAL IMPRESSION OF THE EFFECT OF THE IMPAIRMENT ON WORK-RELATED ACTIVITY:

1.   Ability to relate to others, including fellow workers and supervisors. **Intact**.

2.   Ability to understand and follow simple instructions: **Intact**.

3.   Ability to maintain attention required to perform simple, repetitive tasks: **Intact**.

4.   Ability to withstand the stress and pressures associated with a day-to-day work activity: **Fair to good**.

5.   General Prognosis: **Fair to good**.

## DIAGNOSIS:

AXIS I:        **Polysubstance abuse, in remission.**
               **Major depression, single episode (likely substance induced), in remission.**
               **Adjustment disorder, with mixed emotional features.**

AXIS II:       **Personality disorder, with antisocial features.**

AXIS III:      **Neck surgery.**
               **Neuropathy.**
               **High blood pressure.**

Mr. Armbruster stated that all allegations were addressed.

The claimant currently appears capable of managing his own funds.

This examination took approximately 41 minutes.

Thank you for referring this claimant to our office. Please do not hesitate to call with any questions.

Sincerely,

Harry J. Deppe, Ph.D.
Licensed Clinical Psychologist
License No: 071.004006, Exp. 09/30/16

HJD:gft

P002510

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

SOCIAL SECURITY ADMINISTRATION

FORM APPROVED
OMB No. 0960-0635

## FUNCTION REPORT – ADULT – THIRD PARTY

*How the disabled person's illnesses, injuries, or conditions limit his/her activities*

### SECTION A- GENERAL INFORMATION

**1. NAME OF DISABLED PERSON** *(First, Middle, Last)*

GERRY A ARMBRUSTER

| 2. YOUR NAME *(Person completing the form)* | 3. RELATIONSHIP *(To disabled person)* | 4. DATE *(Month, Day, Year)* |
|---|---|---|
| Glenda M. Parks | girlfriend | 07-15-2015 |

**5. YOUR DAYTIME PHONE NUMBER** *(If there is no telephone number where you can be reached, please give us a daytime number where we can leave a message for you.)*

NEW #
3-1-17

☒ Your Number   ☐ Message Number   ☐ None

Area Code    Phone Number

6. a.  How long have you known the disabled person? __24 years__

b.  How much time do you spend with the disabled person and what do you do together?

We live together, so we spend each day/night together. We go to the store together, people's houses, dinner, doctors visits, ect...

7. a.  Where does the disabled person live? *(Check One.)*

☐ House   ☒ Apartment   ☐ Boarding House   ☐ Nursing Home

☐ Shelter   ☐ Group Home   ☐ Other (What?) _____

b.  With whom does he/she live? *(Check One.)*

☐ Alone   ☐ With Family   ☐ With Friends

☒ Other (describe relationship) __Girlfriend - Glenda M. Parks__

### SECTION B – INFORMATION ABOUT ILLNESSES, INJURIES, OR CONDITIONS

8.  How do this person's illnesses, injuries, or conditions limit his/her ability to work? Limited use of his hands. No grip, fingers numb. most of the time when Gerry go-to up from a sitting position he stumbles and moves sideways. His hands are always hurting, like bee's stinging them. His balance is very limited. His leg (R) shakes uncontrollably, like it's having a seizure. When it's cold outside All of these things multiply severely. His mind races hard to focus. He's in pain almost every minute

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

He has extensive nerve damage. Which makes everyday movements impossible or very painful. He has problems with walking, he'll be walking then his Right side crunches up sometimes to the point of falling down. Both side seize up but the Right side seems to be worse. I don't know why but cold weather makes all his ailments a lot worse. I couldn't see him working in the elements at all. It seems that it would be very hard to find a job that would want to take the risk of him having an accident or being in pain and shaking in front of their customers. He can't sit for long hours, his body is always shaking or seizing up. On a personal note I wouldn't want people staring at me, his body has it's own mind. He can't make it stop when these things happen.

P002512

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

## SECTION C – INFORMATION ABOUT DAILY ACTIVITIES

9. Describe what the disabled person does from the time he/she wakes up until going to bed.

wakes up, takes medication then takes a shower. Sometimes he visits with his parents, or children. He is able to cook for hisself. He gets tired quickly and takes a nap. watches tv. eats then medication and off to bed.

10. Does this person take care of anyone else such as wife/husband, children, grandchildren, parents, friend, other?   ☑ Yes ☐ No

If "YES", for whom does he/she care, and what does he/she do for them? He has four children and a grandson. His youngest is 4 years old. He can't keep up with her. He has to make sure their inside so he wont have to move fast if she got away from him

11. Does he/she take care of pets or other animals?   ☑ Yes ☐ No

If "YES," what does he/she do for them? He does feed the dog, and Refill his water. He can not take him for a walk. or bathe him.

12. Does anyone help this person care for other people or animals?   ☑ Yes ☐ No

If "YES," who helps, and what do they do to help? I help. I bathe the dog. Take him for walks, play catch and run around with him. when he has his youngest child he goes over to his parents house so they can watch his kids

13. What was the disabled person able to do before his/her illnesses, injuries, or conditions that he/she can't do now?

He could move normally, work with his hands. He could enjoy personal time. He could function, like a normal adult. He had hobbies and went places.

14. Do the illnesses, injuries, or conditions affect his/her sleep?   ☑ Yes ☐ No

If "YES," how? His leg shakes uncontrollably, he cries from the pain in his hands while his sleeping. Some of his medication makes him tired but restless.

15. PERSONAL CARE (Check here ☑ if NO PROBLEM with personal care.)

a. Explain how the illnesses, injuries, or conditions affect this person's ability to:

Dress _____

Bathe _____

Care for hair _____

Shave _____

Feed self _____

Use the toilet _____

Other _____

Form SSA-3380-BK (12-2009) ef (01-2013)                    Page 2
DEA: DWSAND, Case Number: 115181MSC-302-6

MSC 217 (04/15)

P002513

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

b. Does he/she need any special reminders to take care of personal needs and grooming?   ☐ Yes  ☒ No

If "YES," what type of help or reminders are needed? _____

c. Does he/she need help or reminders taking medicine?   ☒ Yes  ☐ No

If "YES," what kind of help does he/she need?   I bought him a pill box that has morning/night compartments. He forgets to take his medications at the proper time. His mind doesn't work like before.

16. **MEALS**

a. Does the disabled person prepare his/her own meals?   ☒ Yes  ☐ No

If "YES," what kind of food is prepared (For example, sandwiches, frozen dinners, or complete meals with several courses).   He is able to make food for hisself. Sandwiches, pizza, hamburgers. Simple items.

How often does he/she prepare food or meals? (For example, daily weekly, monthly.)   Daily

How long does it take him/her?   the same amount of time as a normal person.

Any changes in cooking habits since the illness, injuries, or conditions began?   Yes. He can't stand long periods of time and his hands won't let him use a knife to chop up food.

b. If "No," explain why he/she cannot or does not prepare meals. _____

17. **HOUSE AND YARD WORK**

a. List household chores, both indoors and outdoors, that the disabled person is able to do.
   (For example, cleaning, laundry, household repairs, ironing, mowing, etc.)
   He helps around the house, he can do dishes, but it takes a lot longer. He sweeps the kitchen floor. He carries the laundry baskets.

b. How much time do chores take, and how often does he/she do each of these things?
   He will help fold clothes if he is sitting.
   dishes - 1x a week   sweeps - 3x a week   fold clothes 2 a month.

c. Does he/she need help or encouragement doing these things?   ☐ Yes  ☒ No

If "YES," what help is needed? _____

P002514

d. If the disabled person doesn't do house or yard work, explain why not. *He tries to help when he can. He can't shovel snow, no grass cutting. The cold weather makes him hurt a lot more*

## 18. GETTING AROUND

a. How often does this person go outside? *EVERY day*

If he/she doesn't go out at all, explain why not. _____

b. When going out, how does he/she travel? (*Check all that apply.*)

☐ Walk    ☒ Drive a car    ☒ Ride in a car    ☐ Ride a bicycle

☐ Use public transportation    ☐ Other (*Explain*) _____

c. When going out, can he/she go out alone?    ☒ Yes ☐ No

If "NO," explain why he/she can't go out alone. _____

d. Does the disabled person drive?    ☒ Yes ☐ No

If he/she doesn't drive, explain why not. _____

## 19. SHOPPING

a. If the disabled person does any shopping, does he/she shop: (*Check all that apply.*)

☒ In stores    ☐ By phone    ☐ By mail    ☐ By computer

b. Describe what he/she shops for. *He goes along to the market with me. He can make decisions on what food to buy.*

c. How often does he/she shop and how long does it take? *He goes with me about 4x a month. most of the time he can keep up with the normal flow of customers. If he gets tired he'll go out to the car to rest.*

## 20. MONEY

a. Is he/she able to:

| | | |
|---|---|---|
| Pay bills | ☒ Yes ☐ No | Handle a savings account   ☒ Yes ☐ No |
| Count change | ☒ Yes ☐ No | Use checkbook/money orders   ☒ Yes ☐ No |

Explain all "NO" answers. _____

b. Has the disabled person's ability to handle money changed since the illnesses, injuries, or conditions began? ☐ Yes ☒ No

If "YES," explain how the ability to handle money has changed. _____

## 21. HOBBIES AND INTERESTS

a. What are his/her hobbies and interests? (For example, reading, watching TV, sewing, playing sports, etc.) He likes to watch TV. anything to do with cars, racing, fixing up, ect... Also likes the History channel.

b. How often and how well does he/she do these things? He has no problem watching tv.

c. Describe any changes in these activities since the illnesses, injuries, or conditions began. He used to work on cars, he can't do that anymore. His hands hurt too bad, can't hold onto tools very well. Also he used to cut models cars and put them together and paint them. He can't now, because of hands. He was a very talented artist, he could draw anything, he can't.

## 22. SOCIAL ACTIVITIES

a. Does the disabled person spend time with others? (In person, on the phone, on the computer, etc.) ☒ Yes ☐ No

If "YES," describe the kinds of things he/she does with others. He goes to his moms house and sits at dinner table and talks. Once a week the[y] visit with his

How often does he/she do these things? 4yr. old daughter, daughter, or go to McDonalds.

b. List the places he/she goes on a regular basis. (For example, church, community center, sports events, social groups, etc.) His parents house. He goes to Church on Sunday Mornings.

Does he/she need to be reminded to go places? ☐ Yes ☒ No

How often does he/she go and how much does he/she take part? Weekly. He is able to drive.

Does he/she need someone to accompany him/her? ☐ Yes ☒ No

P002516

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

c. Does this person have any problems getting along with family, friends, neighbors, or others?  ☐ Yes  ☒ No

If "YES," explain. _____

d. Describe any changes in social activities since the illnesses, injuries, or conditions began.

He used to go out to car meets to watch, go to parks with his children, exercise (like running). He enjoyed his artwork and making friends wherever he went. Now his hand stop him from drawing. His leg + balance + limited mobility made it impossible to play with his children; go to crowded places.

## SECTION D - INFORMATION ABOUT ABILITIES

23. a. Check any of the following items the disabled person's illnesses, injuries, or conditions affect:

☒ Lifting   ☒ Walking   ☒ Stair Climbing   ☐ Understanding
☒ Squatting   ☒ Sitting   ☐ Seeing   ☐ Following Instructions
☒ Bending   ☒ Kneeling   ☐ Memory   ☒ Using Hands
☒ Standing   ☐ Talking   ☒ Completing Tasks   ☐ Getting Along with Others
☒ Reaching   ☐ Hearing   ☒ Concentration

Please explain how his/her illnesses, injuries or conditions affect each of the items you checked. (For example, he/she can only lift [how many pounds], or he/she can only walk [how far])

He doesn't have the ability to lift more than ____ lbs. Squatting would make him lose balance. Nerve damage prohibits him from bending, standing (for long periods) reaching & kneeling. His muscles seize up and cramp when stray. Stair climbing hurts the back + hip. His hands always hurt. Completing tasks takes focus + concentration.

b. Is the disabled person: ☐ Right Handed ☐ Left Handed? He can do it. He has it all from the pain he easily

c. How far can he/she walk before needing to rest? In cold weather he can't move. In warm weather about 50 w.+. toilet is too hard, losing balance + falling etc.
   If he/she has to rest, how long before he/she can resume walking? In cold weather even in the house, he rests alot, it's best to limit outside as much as possible. In warm weather 3-5 mins.

d. For how long can the disabled person pay attention? depends on the activity, and whats going on around him.

e. Does the disabled person finish what he/she starts? (For Example: a conversation chores, reading, watching a movie.)   ☐ Yes  ☒ No

f. How well does the disabled person follow written instructions? (For example, a recipe) ___
He would have to re-read a recipe almost constantly. When filling out paperwork he goes back through a few times to catch what he missed.

g. How well does the disabled person follow spoken instructions? Very forgetfull. If I told him to buy 10 items, he would call me from the store at least twice. His mind is always going, very hard to focus.

h. How well does the disabled person get along with authority figures? (For example, police, bosses, landlords or teachers? *He has a great personality. Able to make conversations, and show respect. Makes friends easily.*

i. Has he/she ever been fired or laid off from a job because of problems getting along with other people? ☐ Yes ☒ No

If "YES", please explain. _____

_____

If "YES," please give name of employer. _____

j. How well does the disabled person handle stress? *He doesn't handle a lot of stress well. If he's hurting on top of a stressful situation he will get flustered and upset very quickly.*

k. How well does he/she handle changes in routine? *He handles everyday changes well.*

l. Have you noticed any unusual behavior or fears in the disabled person? ☒ Yes ☐ No

If "YES," please explain. *He has expressed to me on many occasions that he doesn't feel like a normal man. He can't work, so he's depressed about not pulling his weight financially. He gets upset and sad about his lack of use of his hands. He worked with his hands, also drawing has been a lifelong passion that he just can't do anymore. He gets frustrated when his body won't listen to what he wants it to do.*

24. Does the disabled person need the use of any of the following? (Check all that apply.)

☐ Crutches    ☐ Cane           ☐ Hearing Aid

☐ Walker      ☐ Brace/Splint   ☐ Glasses/Contact Lenses

☐ Wheelchair  ☐ Artificial Limb ☐ Artificial Voice Box

☐ Other (Explain) _____

Which of these was prescribed by a doctor? _____

_____

When was it prescribed? _____

_____

When does this person need to use these aids? _____

_____

Form SSA-3380-BK (12-2009) ef (01-2013)        Page 7        MSC 217 (04/15)
DEA: DWSAND. Case Number: 115181MSC-302-6

P002518

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

25. Does the disabled person currently take any medicines for his/her illnesses, injuries, or conditions? ☒ Yes ☐ No

If "YES", do any of the medicines cause side effects? ☒ Yes ☐ No

If "YES", please explain. (Do not list all of the medicines that the disabled person takes. List only the medicines that cause side effects for the disabled person.)

| NAME OF MEDICINE | SIDE EFFECTS PERSON HAS |
|---|---|
| GABAPENTIN 300mg 3x daily | makes him very hard to the point the has to lay down for any |
| DICLOFENAC 50mg SOD EC 2x daily | makes him drowsy & feels drained |
| AMITRIPTYLINE 50mg 3@ night | This medication makes him like a zombie no way to wake him & drains him |

## SECTION E- REMARKS

Use this section for any added information you did not show in earlier parts of this form. When you are done with this section (or if you didn't have anything to add), be sure to complete the fields at the bottom of this page.

He now also has problems with his abilitys to have sex. All of his Nerves are damaged to some degree. When he is able to preform it becomes very Painfull, which of course makes him feel sad, hurt, less than the man he was Before. Even though he knows that I understand it's Devastating to him on a whole nother level. He also Dosen't have an outlet for all the issues of his lose of his hands. He was a mechanic/tow truck driver, which you can't do either without full ability of your hands. It's like waking up one day and you can't control your own body. you have to be on the mercey of other people

Name of person completing this form. (Please print)

Celinda M. Parks

Address (Number and Street)

[redacted]

City

[redacted]

Date (month, day, year)

07-15-2015

Email address (optional)

[redacted]

State

[redacted]

Zip Code

[redacted]

Illinois

to survive He has No income No sense of self-worth. I really

hope that He can get some kind of peace of mind when He gets his Social Security disability. feel free to call

1002519

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

**SOCIAL SECURITY ADMINISTRATION**

Form Approved
OMB No. 0960-0681

## FUNCTION REPORT – ADULT

*How your illnesses, injuries, or conditions limit your activities*

For SSA Use Only.
Do not write in this box.

Related SSN _____

Number Holder _____

### SECTION A- GENERAL INFORMATION

| 1. NAME OF DISABLED PERSON *(First, Middle, Last)* | 2. SOCIAL SECURITY NUMBER |
|---|---|
| GERRY A ARMBRUSTER | XXX-XX-5939 |

3. YOUR DAYTIME TELEPHONE NUMBER *(If there is no telephone number where you can be reached, please give us a daytime number where we can leave a message for you.)*

**018** **823-8721**  ☒ Your Number  ☐ Message Number  ☐ None

Area Code    Phone Number

4. a.  Where do you live?  *(Check One.)*

☐ House   ☒ Apartment   ☐ Boarding Home   ☐ Nursing Home
☐ Shelter   ☐ Group Home   ☐ Other (What?) _____

b.  With whom do you live? *(Check One.)*

☐ Alone   ☐ With Family   ☐ With Friends
☒ Other *(Describe Relationship)* Girlfriend

### SECTION B – INFORMATION ABOUT YOUR ILLNESSES, INJURIES, OR CONDITIONS

5.  How do your illnesses, injuries, or conditions limit your ability to work?

Its very hard to function more, use my hands. stand for any

lengths. Pick up heavy loads due to spinal cord damage

P002520

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

## SECTION C – INFORMATION ABOUT DAILY ACTIVITIES

6. Describe what you do from the time you wake up until going to bed.

   take meds, use toilet, drink coffee, and some time time
   of time go back to bed go to sleep

7. Do you take care of anyone else such as a wife/husband, children, grandchildren, parents, friend, other?   ☐ Yes  ☒ No

   If "YES," for whom do you care, and what do you do for them? _____

8. Do you take care of pets or other animals?  water dog bowl    ☐ Yes  ☒ No
   Feed w dog bowl

   If "YES," what do you do for them? _____

9. Does anyone help you care for other people or animals?   ☐ Yes  ☒ No

   If "YES," who helps and what do they do to help? _____

10. What were you able to do before your illnesses, injuries, or conditions that you can't do now? (mechinac)  Fix Autos Duese and operte row tracll

11. Do the illnesses, injuries, or conditions affect your sleep?   ☒ Yes  ☐ No
    If "YES," how?  Some times, clue hands Hurting

12. **PERSONAL CARE** (Check here ☐ if **No PROBLEM** with personal care.)
    a. Explain how your illnesses, injuries, or conditions affect your ability to:

    | | |
    |---|---|
    | Dress | |
    | Bathe ✓ | some times Very hard to croset bend |
    | Care for hair | |
    | Shave | |
    | Feed self | |
    | Use the toilet | |
    | Other? | |

P002521

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

b. Do you need any special reminders to take care of personal needs and grooming?   ☐ Yes  ☑ No

If "YES," what type of help or reminders are needed? _____

_____

c. Do you need help or reminders taking medicine?   ☑ Yes  ☐ No
If "YES," what kind of help do you need? _____

_____

## 13. MEALS

a. Do you prepare your own meals?   ☐ Yes  ☐ No

If "Yes", what kind of food do you prepare?  (For example, sandwiches, frozen dinners, or complete meals with several courses.) _yes cook fod_

_____

How often do you prepare food or meals? (For example, daily weekly, monthly.)

_____ May foe once a week for my self try to help Girlfriend cook

How long does it take you? _twice as long as a normal person_

Any changes in cooking habits since the illness, injuries, or conditions began?

_____

b. If "No," explain why you cannot or do not prepare meals. _when my hands hurt_ _its so hard to prepare food Hold cooking tools_

## 14. HOUSE AND YARD WORK

a. List household chores, both indoors and outdoors, that you are able to do. (For example, cleaning, laundry, household repairs, ironing, mowing, etc.) _Run Vacume_
_sometimes clean Kitchen table_

b. How much time does it take you, and how often do you do each of these things?
_Not very often_

c. Do you need help or encouragement doing these things?   ☑ Yes  ☐ No

If "YES", what help is needed? _some one by side to hold Kitchen tools_

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

   d.  If you don't do house or yard work, explain why not. _I try to held_
_very. bue do paw thru panels_

## 15. GETTING AROUND

   a.  How often do you go outside? _Not to often_

   If you don't go out at all, explain why not. _____

   _____

   b.  When going out, how do you travel? *(Check all that apply.)*

   ☐ Walk   ☐ Drive a car   ☑ Ride in a car   ☐ Ride a bicycle
   ☐ Use public transportation   ☐ Other *(Explain)* _____

   c.  When going out, can you go out alone?   ☑ Yes  ☐ No

   If "NO," explain why you can't go out alone. _girlfriend is always_
_with._

   d.  Do you drive?   ☑ Yes  ☐ No

   If you don't drive, explain why not _Some times, If my legs_
_fre not working._

## 16. SHOPPING

   a.  If you do any shopping, do you shop: *(Check all that apply.)*

   ☑ In stores   ☐ By phone   ☐ By mail   ☐ By computer
   b.  Describe what you shop for. _food, i drive electric cart_

   _____

   c.  How often do you shop and how long does it take? _depends if using_
_electric cart. Once a month._

## 17. MONEY

   a.  Are you able to

   Pay bills   ☐ Yes ☑ No   Handle a savings account   ☑ Yes ☐ No
   Count change ☑ Yes ☐ No   Use checkbook/money orders ☑ Yes ☐ No
   Explain all "NO" answers. _yes and no. money._

   _____

   _____

P002523

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

b. Has your ability to handle money changed since the ☒Yes ☐ No
illnesses, injuries, or conditions began?
If "YES," explain how the ability to handle money has changed.

*dail have none*

18. **HOBBIES AND INTERESTS**

a. What are your hobbies and interests? (For example, reading, watching TV,
sewing, playing sports, etc.)

*none no more*

b. How often and how well do you do these things? *Never*

c. Describe any changes in these activities since the illnesses, injuries, or
conditions began.

*every thing. Little to no use of hands*

19. **SOCIAL ACTIVITIES**

Do you spend time with others? (In person, on the phone,   ☒Yes ☐ No
on the computer, etc.)

a. If "YES," describe the kinds of things you do with others

*very none social - watch TV*

How often do you do these things? *Seldom*

b. List the places you go on a regular basis. (For example, church, community
center, sports events, social groups, etc.)

Do you need to be reminded to go places?          ☐ Yes ☒ No

How often do you go and how much do you take part? *Try to go once a week. Just sit and listen*

Do you need someone to accompany you?          ☒ Yes ☐ No

P002524

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

c.    Do you have any problems getting along with family, friends, neighbors, or others    ☑Yes ☐ No
If "YES," explain. _when in pain._

d.    Describe any changes in social activities since the illnesses, injuries, or conditions began.

_don't hang out. or social friends_

## SECTION D - INFORMATION ABOUT ABILITIES

20.   a.    Check any of the following items your illness, injuries, or conditions affect

☑ Lifting    ☑ Walking    ☑ Stair-Climbing    ☑ Understanding
☑ Squatting    ☐ Sitting    ☐ Seeing    ☐ Following Instructions
☑ Bending    ☑ Kneeling    ☐ Memory    ☑ Using Hands
☑ Standing    ☐ Talking    ☑ Completing Tasks    ☐ Getting Along with Others
☑ Reaching    ☐ Hearing    ☑ Concentration

Please explain how your illness, injuries or conditions affect each of the items you checked. (For example, you can only lift [how many pounds], or you can only walk [how far])

b.    Are you:    ☑ Right Handed?    ☐ Left handed?

c.    How far can you walk before needing to stop and rest?   _20 feet or less_

If you have to rest, how long before you can resume walking?   _20 to 40 mmuts_

d.    For how long can you pay attention? _long till I get bourd_

e.    Do you finish what you start? (For example: a conversation, chores, reading, watching a movie)    ☐ Yes ☑ No

f.    How well do you follow written instructions? (For example a recipe)   _OK_

g.    How well do you follow spoken instructions?   _very good._

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

h.  How well do you get along with authority figures? (For example, police, bosses, landlords or teachers) _good_

i.  Have you ever been fired or laid off from a job because of problems getting along with other people?    ☐ Yes  ☑ No

    If "YES," please explain. _____

    If "YES," please give name of employer _____

j.  How well do you handle stress? _not good - to the best of my ability._

k.  How well do you handle changes in routine? _I don't handle very well._

l.  Have you noticed any unusual behavior or fears?    ☐ Yes  ☑ No

    If "YES," please explain. _____

21. Do you use of any of the following? *(Check all that apply)*

    ☐ Crutches          ☑ Cane          ☐ Hearing Aid
    ☐ Walker            ☐ Brace/Splint  ☐ Glasses/Contact Lenses
    ☐ Wheelchair        ☐ Artificial Limb  ☐ Artificial Voice Box
    ☐ Other (Explain) _____

    Which of these were prescribed by a doctor? _N/A._

    When was it prescribed? _N/A_

    When do you need to use these aids? _depends on the day._
    _N/A_

P002526

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

22. Do you currently take any medicines for your illnesses, injuries, or conditions?   ☑ Yes ☐ No

If "YES," do any of your medicines cause side effects?   ☑ Yes ☒ No

If "YES," please explain (Do not list all of the medicines that you take. List only the medicines that cause side effects.)   *Yes and N*

| NAME OF MEDICINE | SIDE EFFECTS YOU HAVE |
|---|---|
| diclofenac   30 mg | tired  tired |
| Amitriptyline | 50 mg  make me tired |
| Gabapentin | 300 mg  male me tired |
| Buspirone   10 mg | makes me more depressed |
| Baclofen | sour |

## SECTION E - REMARKS

**Use this section for any added information you did not show in earlier parts of this form. When you are done with this section (or if you don't have anything to add), be sure to complete the fields at the bottom of this page.**

Name of person completing this form. *(Please print)*

*Gerry Armbruster*

Address (Number and Street)

*5  East Gate*

City

*Granite City*

State *IL*

*62040*

ZIP Code

*C02015cU*

Date *(month, day, year)*

*7-15-15*

*12-4-13*

Email address (optional)

P002527

CONFIDENTIAL-PURSUANT TO PROTECTIVE ORDER

DEPARTMENT OF HUMAN'S VICES
DIV OF REHAB SERVICES, DISABILITY DETERMINATION
P.O. Box 19250 • Springfield, Illinois 62794-9250

January 20, 2015

Martin T Carrow II
PO BOX 425
EDWARDSVILLE IL 62025

Adjudicator: IRIS R. C:10-924
Telephone: 800 225-3607
Extension: 40628
TTY: 800 362-7754 (for people who
are deaf or speech impaired only)

RE: GERRY A ARMBRUSTER
5 EASTGATE
APT A
PONTOON BEACH IL 62040
SS#: XXX-XX-5939
Claim #: AA6413

GERRY A ARMBRUSTER has applied for disability benefits under the Social Security Act. Our records show that you are the authorized representative on this case. If you have any evidence or correspondence you would like to submit in support of this case, please use this document as the cover. Fax the information to 1-866-778-4959. By doing so, you will guarantee that the material is properly associated with this individual's electronic disability folder. You may use this letter as a cover for additional documents, should the need arise. Please be certain to use this letter as a cover only for documents concerning GERRY A ARMBRUSTER. If you telephone the adjudicator above and leave a message, be sure to give us the claim number for this individual.

---

↑ **Fax your documents to 1-866-778-4959.** ↑

**Use this page as your fax cover sheet.**

**If you have transmission problems, contact the adjudicator at 1-800-225-3607, extension 40628 for assistance.**

---



RQID:1161465976AA6413        SITE:S16 DR:S
SSN:*********  DOCTYPE:5032 RF:D CS:2c6a

```
* 1 1 6 1 4 6 5 9 7 6 *
```

C:10-924
L14

AA6413
(2/7/12)

P002528

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Form Approved
OMB No. 0960-0681

## SOCIAL SECURITY ADMINISTRATION

### FUNCTION REPORT - ADULT
*How your illnesses, injuries, or conditions limit your activities*

| Bureau of Disability Determination Services<br>Post Office Box 19250<br>Springfield, Illinois 62794-9250 | **For SSA Use Only**<br>Do not write in this box.<br>Applicant: GERRY A ARMBRUSTER<br>Adjudicator: IRIS R |
|---|---|

## SECTION A – GENERAL INFORMATION

**1. NAME OF DISABLED PERSON** *(First, Middle Initial, Last)*
GERRY A ARMBRUSTER

**2. SOCIAL SECURITY NUMBER**
XXX-XX-5939

**3. YOUR DAYTIME TELEPHONE NUMBER** *(If there is no telephone number where you can be reached, please give us a daytime number where we can leave a message for you.)*

( 618 )   423 - 8721
Area Code   Phone Number

☑ Your Number   ☐ Message Number   ☐ None

**4. a.** Where do you live? *(Check one.)*

☐ House?   ☑ Apartment?   ☐ Boarding House?   ☐ Nursing Home?

☐ Shelter?   ☐ Group Home?   ☐ Other *(What)*?

**b.** With whom do you live? *(Check one.)*

☐ Alone   ☐ With Family   ☑ With Friends

☐ Other *(Describe relationship.)*

## SECTION B – INFORMATION ABOUT YOUR ILLNESSES, INJURIES, OR CONDITIONS

**5.** How do your illnesses, injuries, or conditions limit your ability to work?

I had Surgery 9-26-14 in the neck region my C5 & C6 were seriousley damedge & Damaded Herniated & Collapsed Doctor Bulley DID MY sergery. went to Emergeny Room in Grunite City IL. Was Rushed to St Marys Hospital for Emergency surgery. As a Result, I have at times Little use of Hands & Arms. not Able to Lift Objects my mavement Real Bad Have Little to No Gripe in Hands they Are Nomb Have trouble walking walking use of Hand walk with Limp all kinds Problems

* 1 1 6 1 4 6 5 9 3 7 *

Claim #: AA6413
Page 1

P002529

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

## SECTION C – INFORMATION ABOUT DAILY ACTIVITIES

6. Describe what you do from the time you wake up until going to bed.

Use bathroom +ake my Medication Hope they will work for me that day in wich they clont I Hurt so Bad I clont function Like I use to my Mobicablity is so bad

7. Do you take care of anyone else such as a wife/husband, children, grandchildren, parents, friend, other?   ☐ Yes   ☑ No

If "YES," for whom do you care, and what do you do for them? _____

_____

8. Do you take care of pets or other animals?   ☐ Yes   ☑ No

If "YES," what do you do for them? _____

9. Does anyone help you care for other people or animals?   ☐ Yes   ☐ No

If "YES," who helps, and what do they do to help?   I clont Houe Pets

_____

10. What were you able to do before your illnesses, injuries, or conditions that you can't do now?

wheater ever needed +o be clone

11. Do the illnesses, injuries, or conditions affect your sleep?   ☑ Yes   ☐ No
If "YES," how? _____

12. **PERSONAL CARE**  (Check here ☐ if **NO PROBLEM** with personal care.)

   a. Explain how the illnesses, injuries, or conditions affect your ability to:

   Dress   hard to get clress clue to nard to bench cuer

   Bathe   nard +o get up and down in the tob

   Care for hair   Girl Friend Helps

   Shave   my Girl Friend Helps me

   Feed self   I feed my self when I can

   Use the toilet   very hard. +o wipe because hard +o

   Other?   bend to one side

* 1 1 6 1 4 6 5 9 3 7 *

C: 10-924
FORM SSA-3373-BK (12-2009)

Claim #: AA6413
Page 2

P002530

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

b. Do you need any special reminders to take care of personal needs and grooming?    ☐ Yes   ☒ No

If "YES," what type of help or reminders are needed? _____

c. Do you need help or reminders taking medicine?    ☒ Yes   ☐ No

If "YES," what type of help do you need? _____

## 13. MEALS

a. Do you prepare your own meals?    ☐ Yes   ☒ No

If "YES," what kind of food do you prepare? *(For example, sandwiches, frozen dinners, or complete meals with several courses.)* _____

How often do you prepare food or meals? *(For example, daily, weekly, monthly.)* _____

How long does it take you? _____

Any changes in cooking habits since the illness, injuries, or conditions began? _____

b. If "No," explain why you cannot or do not prepare meals. _____

## 14. HOUSE AND ~~YARD WORK~~

a. List household chores, both indoors and outdoors, that you are able to do. *(For example, cleaning, laundry, household repairs, ironing, mowing, etc.)*

None

b. How much time does it take you, and how often do you do each of these things?

_____

c. Do you need help or encouragement doing these things    ☒ Yes   ☐ No

If "YES," what help is needed? She my Gill friend thys to encourage me to clo All kinds of sluff But cant really move no more

|||||| BARCODE: * 1 1 6 1 4 6 5 9 3 7 * ||||||

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

d. If you don't do house or yard work, explain why not.  *because everthing Hurts I have Little to Grip with my hands*

## 15. GETTING AROUND

a. How often do you go outside?  *Not much*

If you don't go out at all, explain why not. _____

b. When going out, how do you travel? *(Check all that apply.)*

☐ Walk   ☑ Drive a car   ☐ Ride in a car   ☐ Ride a bicycle
*Girl friend me*
☐ Use public transportation   ☐ Other *(Explain)* _____

☐ Yes ☑ No
c. When going out, can you go out alone?

If "NO," explain why you can't go out alone.  *because I Fall because me Legs ALWAYs shake real Bad*

☐ Yes ☑ No
d. Do you drive?

If you don't drive, explain why not.  *Because my Legs shake All the time*

## 16. SHOPPING

a. If you do any shopping, do you shop: *(Check all that apply.)*

☐ In stores   ☐ By phone   ☐ By mail   ☐ By computer

b. Describe what you shop for:  *Girl friend does the shopping*

c. How often do you shop and how long does it take?  *I don't shop*

## 17. MONEY

a. Are you able to:

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| Pay bills | ☐ | ☑ | Handle a savings account | ☐ | ☑ |
| Count change | ☐ | ☑ | Use a checkbook/money orders | ☐ | ☑ |

Explain all "NO" answers.  *For one No Money 2 No Job Because cant work, Its to hard 4 me to do Any thing.*

‖‖‖‖‖‖‖‖‖‖‖‖‖‖
* 1 1 6 1 4 6 5 9 3 7 *

C:10-924
FORM SSA-3373-BK (12-2009)

Claim #: AA6413
Page 4

P002532

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

b. Has your ability to handle money changed since the illnesses, injuries, or conditions began?  ☐ Yes  ☑ No

If "YES," explain how the ability to handle money has changed. _____

_____

## 18. HOBBIES AND INTERESTS

a. What are your hobbies and interests? *(For example, reading, watching TV, sewing, playing sports, etc.)*  dont hove Any no more

lost intrest necause cant do nothing

b. How often and how well do you do these things?  Do what things I have hard

time just using the bathroom

c. Describe any changes in these activities since the illnesses, injuries or conditions began.

All things I use to do I now cant

## 19. SOCIAL ACTIVITIES

a. Do you spend time with others? *(In person, on the phone, on the computer, etc.)*  ☐ Yes  ☑ No

If "YES," describe the kinds of things you do with others. _____

How often do you do these things? _____

b. List the places you go on a regular basis. *(For example, church, community center, sports events, social groups, etc.)*  have no social life

Do you need to be reminded to go places?  ☑ Yes  ☐ No

How often do you go and how much do you take part?  only to see Doctor

Do you need someone to accompany you?  ☑ Yes  ☐ No

C:10-924
FORM SSA-3373-BK (12-2009)

* 1 1 6 1 4 6 5 9 3 7 *

Claim #: AA6413
Page 5

P002533

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

c. Do you have any problems getting along with family, friends, neighbors, or others?    ☐ Yes  ☑ No

If "YES," explain. _____

d. Describe any changes in social activities since the illnesses, injuries, or conditions began.

again it is very difficult for me to do any thing

## SECTION D – INFORMATION ABOUT ABILITIES

20. a. Check any of the following items that your illnesses, injuries, or conditions affect:

☑ Lifting   ☑ Walking   ☑ Stair Climbing   ☐ Understanding
☑ Squatting   ☑ Sitting   ☐ Seeing   ☐ Following Instructions
☑ Bending   ☑ Kneeling   ☑ Memory   ☑ Using Hands
☑ Standing   ☐ Talking   ☑ Completing Tasks   ☐ Getting Along with Others
☑ Reaching   ☐ Hearing   ☐ Concentration

Please explain how your illnesses, injuries, or conditions affect each of the items you checked. (For example, you can only lift [how many pounds], you can only walk [how far])

Dont walk very far due to me falling. I have little to no balance my brain tell my legs what to do but they dont listen

b. Are you:  ☑ Right Handed?  ☐ Left Handed?

c. How far can you walk before needing to stop and rest? _Maybe 10 feet_

If you have to rest, how long before you can resume walking? _Just a few minutes_

d. For how long can you pay attention? _Not to long_

e. Do you finish what you start? (For example, a conversation, chores, reading, watching a movie)   ☐ Yes  ☑ No

f. How well do you follow written instructions? (For example, a recipe) _Not Good_

g. How well do you follow spoken instructions? _Some times_

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

h. How well do you get along with authority figures? (For example, police, bosses, landlords, or teachers)   Fine

i. Have you ever been fired or laid off from a job because of problems getting along with other people?   ☐ Yes   ☑ No

If "YES," please explain. _____

If "YES," please give name of employer. _____

j. How well do you handle stress? _____

k. How well do you handle changes in routine?   ok  i  guess

l. Have you noticed any unusual behavior or fears?   ☐ Yes   ☑ No

If "YES," please explain. _____

21. Do you use any of the following? *(Check all that apply.)*

☐ Crutches   ☑ Cane   ☐ Hearing Aid
☐ Walker   ☐ Brace/Splint   ☐ Glasses/Contact Lenses
☐ Wheel Chair   ☐ Artificial Limb   ☐ Artificial Voice Box
☐ Other *(Explain)* _____

Which of these were prescribed by a doctor?   N/

When was it prescribed? _____

When do you need to use these aids?   some times  my  Gicl Friencl
Helps  when  she  is  around



C:10-924
FORM SSA-3373-BK (12-2009)

Claim #: AA6413
Page 7

P002535

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

**22.** Do you currently take any medicines for your illnesses, injuries or conditions?   ☑ Yes   ☐ No

If "YES," do any of your medicines cause side effects?   Sometimes   ☑ Yes   ☐ No

If "YES," please explain.  (Do not list all of the medicines that you take.  List only the medicines that cause side effects.)

PIROXICAM 20 MG   DONT KNOW YET JUST BEEN PUT ON THEM

| NAME OF MEDICINE | SIDE EFFECTS YOU HAVE |
|---|---|
| OMEPRAZOLE 40 Mg ACID REFLUX | NONE |
| DICLOFENAC 50 MG | DIZZY |
| AMLODIPINE 5 MG Blood pressure | NONE |
| GABAPENTIN 30 MG PAIN BACK | I Get Sick |
| AMITRIPYLINE 50 MG | DIZZY |
| BACLOFEN 20 MG | NO |
| HYDROCODONE 5-325 - NONE | |

## SECTION E – REMARKS

Use this section for any added information you did not show in earlier parts of the form.  When you are done with this section (or if you don't have anything to add), be sure to complete the boxes at the bottom of this page.

Name of person completing this form (Please print)

Gerry Armbruster

Address (Number and Street)

5 EAST GATE

City

Granite City

Date (month, day, year)

1-30-15

email address (optional)

State

IL

Zip Code

62040



* 1 1 6 1 4 6 5 9 3 7 *

C:10-924
FORM SSA-3373-BK (12-2009)

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

Applicant: GERRY A ARMBRUSTER

Claim #: AA6413

# ADDITIONAL INFORMATION

We may need further information about your condition. Please list below two or three individuals who know you and can give us more information about how you live (such as a rehabilitation counselor, social worker, landlord, relative, or friend).

Name: GLenda PuLls
Street Address: ▓▓▓▓
City, State, Zip Code: ▓▓▓▓
Telephone number: ▓▓▓▓    Relationship: GiLL Friend
            Area code     Telephone #

Name: BiLL Armbruster
Street Address: ▓▓▓▓
City, State, Zip ▓▓▓▓
Telephone number: ▓▓▓▓    Relationship: Father
            Area code     Telephone #

Name: Debbie Armbruster
Street Address: ▓▓▓▓
City, State, Zip Code: ▓▓▓▓
Telephone number: ▓▓▓▓    Relationship: Mother
            Area code     Telephone #

In addition to the above, please enter any information about additional medical treatment received since your disability claim was filed, any new doctors seen and any future appointments set up. Please include doctor's address, telephone number and dates of service, if known.



C:10-924
F134C

Claim #: AA6413
(7/30/09)

P002537