U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS, EAST ST. LOUIS DIVISION

| | |
|---|---|
| GERRY ARMBRUSTER #S02006,<br>  Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH CARE, INC.;<br>BHARAT SHAH; RON VITALE; LORETTA<br>WILFORD,<br><br>  Defendants. | No. 3:16-cv-00544-SMY-MAB<br><br>Judge Staci M. Yandle<br><br>Magistrate Judge Mark A. Beatty |

**DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION**

COMES NOW Defendant LORETTA WILFORD by and through her attorneys, CASSIDAY SCHADE LLP, and for her Objections to Magistrate Judge Beatty's Report and Recommendation (Doc. 219) pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), states as follows:

1.  Under SDIL-LR 73.1(b), any party may object to a Magistrate Judge's proposed dispositive findings within 14 days of being served. The District Judge shall conduct a *de novo* review of the proposed findings objected to and may conduct a new hearing.

2.  On July 23, 2019, Magistrate Judge Beatty issued a Report and Recommendation regarding Defendants' Motion for Summary Judgment. (Doc. 219).

3.  Defendant Wilford objects to the finding that there is a genuine issue of material fact that she knew Plaintiff had a serious medical need and the conclusion that a reasonable jury could conclude that she deliberately disregarded that need. Specifically, Nurse Wilford objects to the finding that she saw Plaintiff on "9 more occasions over the course of the next 4 months" after the May 13, 2014 appointment and Plaintiff's medical chart would have made her aware that Plaintiff's condition was serious.[1]  (Doc. 219, p. 32).

---

[1] Nurse Wilford did not see Plaintiff on May 14, 2014.  (Doc. 133-1, 231); (Doc. 133-8, 153:25-154:7).

First, there is no evidence that Plaintiff reported to Nurse Wilford any complaints about tingling and numbness at the August 1, 2014 and September 9, 2014 appointments.[2] The remaining appointments were all approximately 5 weeks from when Plaintiff first complained of tingling and numbness at Southwestern (May 13, 2014). Similarly, the Report assumes that Nurse Wilford reviewed the other medical entries at the times she encountered Plaintiff; however, Nurse Wilford encountered Plaintiff for blood pressure checks, labs, and to get his vital signs, not in a diagnostic capacity. Additionally, looking at the medical records it reflects that Plaintiff repeatedly showed no neurological deficits upon testing and numerous tests were ordered to identify what was causing those symptoms. Further, the last time she saw Plaintiff for an appointment related to his complaints of tingling and numbness (June 23, 2014) he reported to Dr. Shah that he was feeling better and then Plaintiff stopped reporting tingling and numbness altogether. (Doc. 133-1, 246). Therefore, Plaintiff's claim is essentially that if Dr. Shah does not resolved Plaintiff's symptoms within approximately 5 weeks that Nurse Wilford could not rely on Dr. Shah's diagnostic process and instead had a constitutional obligation to intervene in Dr. Shah's care; that is not the standard for deliberate indifference.

Second, the Report and Recommendation assumes that Plaintiff's reports of tingling and numbness would have made Nurse Wilford aware that Plaintiff had a serious medical need; however, not only is Ms. Wilford a nurse, not a doctor capable of diagnosing, but also Nurse Wilford testified that she experiences tingling and numbness from arthritis. (Doc. 133-8, 115:3-17). Nurse Wilford knows many conditions, including non-serious conditions requiring no treatment can cause these symptoms. In fact, the records show that she first documented Plaintiff's complaint as a "pinched nerve." (Doc. 157-13, p. 5). Further, Plaintiff's medical

---

[2] Plaintiff testified that he was not sure whether he complained of tingling and numbness after July 2, 2014 and cannot recall the dates if he complained. (Doc. 133-4, 79:4-15).

records showed he was being tested and monitored for non-serious conditions like arthritis and a lumbar sprain. (Doc. 133-1, 239-40). Nurse Wilford did not know that Plaintiff's condition was serious or that he had a spinal cord compression, assuming *arguendo* he had one during the time he was incarcerated. (Doc. 133-8, 204:25-205:14). In fact, Dr. Brown, Plaintiff's expert, could not opine that Nurse Wilford's care was inappropriate. (Doc. 133-7, 21:20-22: 6; 134:12-15). Therefore, the undisputed evidence is that Nurse Wilford was not aware that Plaintiff's had a serious medical condition or required any further testing or treatment than what he was being given.[3]

4.     Defendant Wilford also objects to the finding that there is a genuine issue of material fact that Nurse Wilford failed to intervene in Plaintiff's care. Specifically, the Report incorrectly finds that "Nurse Wilford repeatedly encountered Armbruster in severe pain and complaining that his arm was numb, that he was having trouble walking, and that he needed help beyond what Dr. Shah was providing. It was also clear, even to a lay person, that Dr. Shah's course of treatment was blatantly inappropriate." (Doc. 219, p. 43).

First, in addition to the above, there is no evidence that Nurse Wilford ever encountered Plaintiff in "severe pain." Plaintiff did not testify that he ever told Nurse Wilford that he was in "severe pain." (Doc. 133-4, 43:2-13). Nowhere in the IDOC medical records is Plaintiff's pain described as "severe" and the last time Nurse Wilford saw Plaintiff for complaints of tingling and numbness Plaintiff reported to Dr. Shah that he was feeling better[4] and then stopped reporting tingling and numbness altogether. (Doc. 133-1, 246). Meanwhile, it is undisputed that Plaintiff was working, including assisting in carrying an approximately 150 pound machine up

---

[3] Nurse Wilford testified she does not know if a spinal cord compression can heal on its own (i.e. even requires treatment). (Doc. 133-8, 118:3-11).

[4] Nurse Wilford was not in Dr. Shah's examination room during any of Plaintiff's doctor's appointments. (Doc. 133-8, 160:4-7).

two flights of stairs and compress a power paddle on the handlebar of the scrubbing and buffing machines for over an hour. (Doc. 133-9, 67:7-69:21; 93:22-96:18).

Second, Dr. Petkovich who has performed hundreds of spinal decompression surgeries testified that based on his review of the records he would not have ordered an MRI and instead found Dr. Shah's care to be appropriate. Similarly, Dr. Brown, Plaintiff's expert, could not opine that Nurse Wilford's care was inappropriate. (Doc. 133-7, 21:20-22: 6; 134:12-15). Therefore, the Report errs in finding that a nurse reviewing the same records clearly knew Dr. Shah's treatment (that caused Plaintiff to report that he was feeling better) was "blatantly inappropriate." (Doc. 133-3).

5. Accordingly, Nurse Wilford objects the Report and Recommendation for the above stated reasons and respectfully requests the Court to grant her Motion for Summary Judgment and dismiss her from this action.

WHEREFORE, for the foregoing reasons, Defendant LORETTA WILFORD prays this Court grant her Motion for Summary Judgment and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: */s/ Jaclyn Kinkade*
    Attorneys for Defendants BHARAT SHAH,
    M.D., WEXFORD HEALTH SOURCES,
    INC., and LORETTA WILFORD

Jaclyn Kinkade
MO Bar 63935
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
jkinkade@cassiday.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 6, 2019, I electronically filed the foregoing with the Clerk of the Southern District of Illinois using the CM/ECF system.  The electronic case filing system sent a "Notice of E-Filing" to the following:

Arthur Loevy, Esq.
Sarah Copeland Grady, Esq.
Jon I. Loevy, Esq.
Katherine A. Roche, Esq.
Michael Knovitz, Esq.
Adair Crosley, Esq.
Loevy & Loevy
311 North Aberdeen Street
Third Floor
Chicago, IL 60607
jon@loevy.com
Katie@loevy.com
mike@loevy.com
loevylaw@loevy.com
sarah@loevy.com
adair@loevy.com


                                                                            */s/ Jaclyn Kinkade*