## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GERRY ARMBRUSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16 C 0544 |
| | ) | |
| BHARAT SHAH, et al., | ) | Hon. Staci M. Yandle, Judge |
| | ) | |
| Defendants. | ) | Hon. Mark A. Beatty, Mag. Judge |

### PLAINTIFF'S RESPONSE TO DEFENDANT WILFORD'S
### OBJECTIONS TO REPORT AND RECOMMENDATION

Plaintiff GERRY ARMBRUSTER, by his attorneys, LOEVY & LOEVY, hereby

responds to Defendant Wilford's Objections to Report and Recommendation (Doc. No. 220) and

asks this Court to overrule the objections and adopt Magistrate Judge Beatty's recommendation

in its entirety (Doc. 219). In support, Plaintiff states as follows:

### Introduction

Plaintiff Gerry Armbruster suffered a severe spinal cord compression in 2014 while at

Southwestern Illinois Correctional Center ("SWICC"). Despite his persistent complaints of

neurological symptoms and requests for adequate medical attention, Defendants refused to

provide him with proper evaluation or treatment, which has left him with permanent neurological

damage.

Plaintiff subsequently filed this lawsuit, and Defendants moved for summary judgment

on each one of Plaintiff's claims. On July 23, 2019, in a well-reasoned and thoroughly supported

report, Judge Beatty recommended that this Court grant summary judgment to Wexford on

Plaintiff's section 1983 claim against it and deny summary judgment to Defendants in all other

respects.[1] In support of his recommendation, Judge Beatty discussed in detail the evidence marshalled against each Defendant, and applied that evidence to the applicable precedents governing Plaintiff's claims.

Nurse Wilford now objects to Judge Beatty's recommendation that Plaintiff be permitted to try his section 1983 claims against her to a jury. Raising arguments never presented to Judge Beatty in the motion for summary judgment or reply, Nurse Wilford argues that no reasonable jury could find that she knew of Armbruster's neurological symptoms during the last month of his incarceration, or that she ever connected the dots between his neurological symptoms and the risk of harm he faced as a result. Wilford also objects to Judge Beatty's determination that the evidence supports a finding that even a lay person would know that Dr. Shah's course of treatment was blatantly inappropriate.

Nurse Wilford ignores all of the key evidence against her, including her numerous statements under oath that Armbruster regularly complained to her of his alarming symptoms that she neither documented or reported, or otherwise took action to address. Other evidence is presented in the light most favorable to Nurse Wilford, rather than in the light most favorable to Armbruster (the nonmoving party) as Rule 56 requires.

When viewed in the correct light, the evidence plainly supports a conclusion that Nurse Wilford acted with deliberate indifference to Plaintiff's serious medical need and failed to intervene to ensure that Plaintiff received adequate care at SWICC. This Court should therefore overrule Nurse Wilford's objections and adopt Judge Beatty's recommendation to deny Nurse Wilford's motion for summary judgment.

---

[1]     Magistrate Judge Beatty did not rule on Defendant Vitale's motion for summary judgment because Plaintiff and Defendant Vitale reached a settlement in this case, mooting Vitale's summary judgment motion. *See* Doc. 210.

**Standard of Review**

District courts review *de novo* those portions of a magistrate judge's report and recommendation on a summary judgment motion to which objection is made. 28 U.S.C. § 636(b)(1). When considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party, and that party must be granted all reasonable inferences from the evidence. *Riker v. Lemmon*, 798 F.3d 546, 551 (7th Cir. 2015). Circumstantial evidence is entitled to equal weight, especially in cases like this one that "turn on circumstantial evidence . . . ." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc).

**Argument**

Judge Beatty concluded, following a thorough review of the evidence in this case, that a reasonable jury could determine that Nurse Wilford knew of, but consciously disregarded, a serious risk to Armbruster's health. Doc. 219 at 31-33; *see also Petties*, 836 F.3d at 728 (discussing the elements required to prove a deliberate indifference claim). Judge Beatty also concluded that the evidence permitted a determination that Nurse Wilford knew that Armbruster was receiving constitutionally deficient medical care, had a realistic opportunity to take action, but did nothing. Doc. 219 at 42 (citing *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017)).

Nurse Wilford objects to Judge Beatty's recommendation to deny summary judgment to her on both Plaintiff's deliberate indifference claim and his failure-to-intervene claim against her. As to the first claim, Nurse Wilford takes issue with the inference that she was aware of Plaintiff's persistent neurological complaints or (for the first time on appeal) that she knew that these symptoms posed a risk to Plaintiff's health. As to the failure-to-intervene claim, Nurse Wilford contends that because Defendants retained an expert blessing Dr. Shah's medical care,

3

no reasonable jury could determine that Nurse Wilford failed to intervene. Nurse Wilford's arguments are forfeited and meritless, and this Court should adopt Judge Beatty's well-supported and -reasoned recommendation to deny summary judgment on Plaintiff's claims against her.

**I.      This Court Should Overrule Nurse Wilford's Objection Regarding Plaintiff's Deliberate Indifference Claim Against Her.**

To prevail on his deliberate indifference claims, Plaintiff must prove that he suffered from an objectively serious medical condition, and that Defendants were aware of, and consciously disregarded, a serious risk of harm to Plaintiff. *Petties*, 836 F.3d at 728 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Ortiz v. Webster*, 655 F.3d 731, 734 (7th Cir. 2011). Plaintiff must show that the defendant "know facts from which he could infer that a substantial risk of serious harm exists and he must actually draw the inference." *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017). But a defendant cannot immunize herself from liability from claiming ignorance: "where evidence exists that the defendant[] knew better than to make the medical decision[] that [she] did," summary judgment is improper. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016); *see also Petties*, 836 F.3d at 728-29 ("[A] plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm" but "plaintiffs generally lack direct evidence of actual knowledge" and thus "[m]ost cases turn on circumstantial evidence, often originating in a [medical professional's] failure to conform to basic standards of care").

Nurse Wilford contends that there is insufficient evidence that she knew of facts from which she could infer a substantial risk to Armbruster's health, or that she actually drew that inference. She does not contest that, if proven, her response to that awareness was deficient.

**A.      A reasonable jury could find that Nurse Wilford was well aware of Armbruster's persistent neurological symptoms.**

Nurse Wilford's own testimony is sufficient to support a jury finding that she knew Armbruster was suffering from persistent pain, numbness, and tingling in his back and limbs for a period of months. As Judge Beatty recounted, Nurse Wilford testified to remembering Armbruster "because 'he would come to sick call and complain of numbness and tingling in his arm, and he did it frequently,' meaning 'once a week at least.'" Doc. 219 at 16 (citing Doc. 157-4 (Wilford Dep.) at 4-5).[2] Armbruster, she explained, would "wear the hell out of you" with complaints about his symptoms. *Id.* (citing Doc. 157-4 at 6-7). According to Wilford, Armbruster "complained to anybody that would listen to him . . . ." Doc. 157-4 at 5. Wilford estimated that Armbruster raised these complaints for "more than six months" and admitted that he "complained until he left" SWICC. *Id.* at 4.

Although she later attempted to retract this testimony, Judge Beatty noted that her initial descriptions are consistent with "Armbruster's own testimony that he frequently complained to medical personnel about his symptoms" and "that some of his problems, like the difficulty he had walking, were obvious to anyone who saw him." Doc. 219 at 32. Indeed, Armbruster testified at his deposition that "every time there would be a nurse I'd be telling them what's going on." Doc. 157-7 at 14. According to Armbruster, what was going on included persistent neurological issues and pain: "What I remember there was no coming and going. It was on every day. It just kept getting worse. Wasn't like a headache. It just kept getting worse. Wasn't like a headache. It was constant all the time. It was pure hell." *Id.* at 21.

---

[2]      Like Judge Beatty, Plaintiff refers to the page number of the filed document, and not the particular page of the deposition transcript.

Nurse Wilford concedes that the evidence supports a conclusion that she was made aware of Plaintiff's neurological complaints between May 13, 2014 and August 1, 2014. Doc. 220 at 2 (describing June 23, 2014 as the last appointment Wilford attended "related to [Plaintiff]'s complaints of tingling and numbness). This concession itself defeats Wilford's objection. *See* Doc. 219 at 32-33 ("[A] jury might reasonably conclude that Nurse Wilford *repeatedly* encountered Armbruster in severe pain and complaining that his arm was numb, that he was having trouble walking, and that he needed help beyond what Dr. Shah was providing, but Nurse Wilford did, literally, nothing about it."); *see also Zaya v. Sood*, 836 F.3d 800, 806 (7th Cir. 2016) (four weeks of inaction by medical staff sufficient to create material question of fact as to staff's deliberate indifference); *Petties*, 836 F.3d at 730 (delay in providing treatment is actionable if it "exacerbated the injury or unnecessarily prolonged pain"); *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) ("even brief, unexplained delays in treatment may constitute deliberate indifference").

But Nurse Wilford's contention that she was not aware of Plaintiff's neurological complaints during the August 1 and September 9 appointments is also flatly contradicted by her own testimony and other evidence in the record. As noted above, Wilford admitted at her deposition that Armbruster raised neurological complaints persistently until he was released from SWICC. This admission indicates that she was aware both of Mr. Armbruster's complaints, and of Dr. Shah's refusal to provide an evaluation or treatment of those complaints. Plaintiff similarly testified that his neurological symptoms persisted from May 2014 until after his release, and that he voiced those symptoms to any nurse he encountered.

Armbruster's medical records similarly suggest that Nurse Wilford was aware of his symptoms from May 13 until he left SWICC, as Judge Beatty observed. *Id.* Nurse Wilford

6

documented Armbruster's complaints of persistent pain, tingling, and numbness in his medical

chart on May 13, 2014. Doc. 157-8 at 86. Although she never documented his complaints again,

other medical professionals did, in notes that Nurse Wilford would have seen during the nine

occasions she saw Armbruster after May 13. Doc. 157-4 at 24. Specifically, Nurse Wilford

testified that if a patient raised a complaint that he had raised previously, she would review the

chart to understand the history of the complaint. *Id.* ("If [the patient] has a history or something,

I'm going to go back and review [the medical file]."). And both Armbruster and Wilford testified

that Armbruster raised the same neurological complaints each time he encountered Nurse

Wilford and the other nurses at SWICC. Additionally, a jury could find it implausible that

Armbruster would have reported his symptoms to some members of the medical staff (those who

documented his complaints) but not to Nurse Wilford, especially considering her testimony that

he complained of his symptoms to her with great regularity. As Judge Beatty put it,

"Armbruster's reported symptoms were documented all over his chart—the same chart Nurse

Wilford reviewed and took notes in when she saw Armbruster, which makes it seemingly

implausible that Nurse Wilford was unaware of Armbruster's complaints." Doc. 219 at 32.

Nurse Wilford contends that there is no evidence that Armbruster ever reported "severe

pain" to her. Doc. 220 at 3. Armbruster, however, testified that he suffered pain, tingling, and

numbness "every day"; the symptoms were "constant" and were "pure hell." Doc. 219 at 13;

Doc. 157-7 at 21. Armbruster reported his symptom "every time there would be a nurse . . . ."

Doc. 157-7 at 14. The medical records corroborate Armbruster's testimony, including to Nurse

Wilford on May 13, 2014 as documented in her own medical note from that date. Doc. 219 at 5;

Doc. 157-8 at 86. Nurse Maston also noted on Armbruster's chart that he rated his pain as a "10"

on September 4, 2014. Doc. 219 at 14; Doc. 157-8 at 106. And Nurse Wilford herself testified

that Armbruster would "complain[] to anybody that would listen" about his symptoms, *id.* at 14, 16, and she noted "pain" as one of his symptoms when she saw him on May 13. *Id.* at 5. If all of this evidence is credited, as it must be at summary judgment, a reasonable jury could easily find that Nurse Wilford was made aware of Armbruster's severe pain.[3]

Nurse Wilford also states in her objection that "the last time she saw Plaintiff for an appointment related to his complaints of tingling and numbness (June 23, 2014) he reported to Dr. Shah that he was feeling better and then Plaintiff stopped reporting tingling and numbness altogether." Doc. 220 at 2. This statement sets forth two disputed facts in the light most favorable to Nurse Wilford—a clear violation of Rule 56. First, Armbruster disputes that he told Dr. Shah he was feeling better. Doc. 157-7 at 21. Additionally, there is substantial evidence contradicting Nurse Wilford's claim that Armbruster stopped voicing neurological complaints after June 23, including her own admissions, Doc. 157-4 at 4, Armbruster's testimony, Doc. 157-7 at 21, and the medical records themselves, Doc. 157-8 at 103 (July 2, 2014). And Nurse Wilford's contention that Armbruster showed no neurological deficits upon testing, Doc. 220 at 2, is misleading and contradicted by the record, as Judge Beatty explained in exhaustive detail. Doc. 219 at 6-7, 9-11, 28-29 ("Dr. Shah's stated excuse that there were no objective findings of a neurological issue is directly contradicted by the medical records.").

In sum, the evidence in this record is more than sufficient to lead a reasonable jury to the conclusion that Armbruster told Nurse Wilford about his neurological complaints repeatedly and consistently between May 13, 2014 and September 15, 2014, when Armbruster was released from prison.

---

[3]   Nurse Wilford also contends that "it is undisputed" that Plaintiff carried a 150-pound machine up two flights of stairs and compressed a power paddle on a scrubbing and buffing machine for more than an hour. Doc. 220 at 3-4. Simply put, this statement is clearly disputed and Nurse Wilford has not disclosed any witnesses that will provide support for this statement. *See, e.g.*, Doc. 157-7 at 16, 43-44 (Armbruster's job was to fill "little Windex bottles" and drop them off at other housing units).

**B.      A reasonable jury could find that Nurse Wilford knew that Armbruster's symptoms posed a substantial risk of harm.**

The evidence in this record is also sufficient to support a reasonable jury's finding that she knew Armbruster's persistent symptoms were serious enough to require further treatment. Doc. 219 at 32-33. Specifically, Nurse Wilford testified that the neurological symptoms Armbruster raised are an "emergency," "something you don't just brush off" and something that requires a cervical collar and an immediate trip to the emergency department. Doc. 219 at 17–18; Doc. 157-4 at 32, 41; *see also id.* at 31 (admitting that severe spinal cord compression with cord signal change is "a serious medical condition"—one that even "a laym[a]n would know . . . is wrong."). This evidence would directly support a jury's conclusion that Nurse Wilford knew that Armbruster's neurological symptoms posed a substantial risk of harm. *Farmer*, 511 U.S. at 836.

But there is other circumstantial evidence in the record to support this conclusion. First, Nurse Wilford admitted that a person with spinal cord compression would exhibit "[p]ain, numbness, maybe some impairment in movement"—the same symptoms that Wilford acknowledges Armbruster raised with her repeatedly between May 13 and September 15. Doc. 157-4 at 119; *see also id.* at 4 (recalling that Armbruster "frequently" complained of numbness and tingling); Doc. 157-7 at 14 (recalling that he would tell staff about his symptoms "every time there would be a nurse"). Evidence that Nurse Wilford recognized the symptoms Armbruster reported to her as those that occur in a patient with spinal cord compression is sufficient itself to lead a reasonable jury to the conclusion that Nurse Wilford was aware that Plaintiff faced a substantial risk of harm without treatment. *See Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000) (evidence that plaintiff suffered symptoms consistent with appendicitis sufficient to defeat summary judgment on defendants' awareness of risk to plaintiff's health). And even Nurse Wilford herself admits that the risk of harm to a person experiencing persistent numbness and

tingling is obvious. Doc. 157-4 at 31, 158; *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including . . . from the very fact that the risk was obvious.").

Nurse Wilford denies that a reasonable jury could find Armbruster's complaints would have alerted her to his serious medical need. Doc. 220 at 2. Her ignorance of his condition is evidenced, she contends, by the fact that "she first documented Plaintiff's complaint as a 'pinched nerve.'" *Id.* First, as Judge Beatty concluded, a jury could reasonably discredit Nurse Wilford's statement that she believed Plaintiff's symptoms were caused by a pinched nerve based on the evidence discussed above. Doc. 219 at 31-32. But even if the jury credits her testimony, this fact is not helpful to her, particularly when viewed in the light most favorable to Armbruster. In that light, the "pinched nerve" note is confirmation that Nurse Wilford knew from the very beginning that Armbruster was potentially suffering from a serious neurological problem. *See* Doc. 157-4 at 30 (recognizing that pressure against a nerve can cause numbness and tingling that "would not be normal"); Doc. 219 at 24 (citing *Perez v. Sullivan* 2002 WL 32362248, at *4 (W.D. Wis. Apr. 30, 2002), *aff'd*, 52 F. App'x 275 (7th Cir. 2002) ("Unquestionably, a spinal injury [consisting of a herniated disc and pinched nerve] is a serious medical condition that carries a risk of grave and permanent impairment.")).[4]

---

[4]   Nurse Wilford also contends that Armbruster's medical records show he was being monitored for "non-serious conditions" like arthritis and a lumbar sprain. Doc. 220 at 2-3. First, the cited medical record reflects that on May 28, 2014 Armbruster *again* reported pain, tingling, and numbness, Doc. 133-1 at 239-40; Doc. 157-3 at 62, providing strong support for Plaintiff's claim that Wilford was both made aware of Plaintiff's persistent neurological complaints and appreciated the serious risk of harm that those persistent symptoms posed to Armbruster. Additionally, as Judge Beatty found, a jury could reasonably disbelieve the suggestion that medical staff believed Armbruster's neurological complaints were "non-serious." Doc. 219 at 28-30.

II.    **A Reasonable Jury Could Conclude that Nurse Wilford Failed to Intervene to Ensure Plaintiff Received Adequate Care.**

Nurse Wilford does not dispute that, having been made aware of Armbruster's neurological symptoms and the serious risk of harm to Armbruster from those symptoms, her failure to document those complaints constituted deliberate indifference. Doc. 219 at 31-33; *see generally* Doc. 220. She does, however, object to Judge Beatty's conclusion that a reasonable jury could find that she failed to intervene to ensure that Armbruster received constitutionally adequate care. Doc. 219 at 32-33, 42-43. To succeed on a section 1983 failure-to-intervene claim, Plaintiff must show that Nurse Wilford "knew [Plaintiff] was receiving constitutionally deficient medical care and had a realistic opportunity to prevent the harm from occurring but failed to do so." Doc. 219 at 42 (citing *Gill*, 850 F.3d at 342); *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477-78 (7th Cir. 1997). The Seventh Circuit has repeatedly held that "[w]hile nurses may generally defer to instructions given by physicians, they have an independent duty to ensure that inmates receive constitutionally adequate care." *Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015); *see also Rice ex rel. Rice v. Corr. Med. Serv.*, 675 F.3d 650, 683 (7th Cir. 2012) (same); *Berry Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (same); *Perez*, 792 F.3d at 779 ("A nurse confronted with an inappropriate or questionable practice should not simply defer to that practice, but rather has a professional obligation to the patient to take appropriate action, whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority.").

Based on the evidence submitted in this case, Judge Beatty concluded that "a jury might reasonably conclude that Nurse Wilford *repeatedly* encountered Armbruster in severe pain and complaining that his arm was numb, that he was having trouble walking, and that he needed help beyond what Dr. Shah was providing, but Nurse Wilford, did, literally, nothing about it." Doc.

219 at 33; *id.* at 42-43. Nurse Wilford now argues, for the first time in her objection, that because her retained expert, Dr. Petkovich, blessed Defendant Dr. Shah's conduct, she, a nurse, cannot be expected to have recognized that Dr. Shah was not providing adequate treatment to Armbruster. Doc. 220 at 4. Essentially, Nurse Wilford asks this Court to find that a nurse can immunize herself from liability for failing to intervene by paying an expert to offer opinions blessing the care at issue.

By failing to raise it below, Nurse Wilford forfeited this argument. *See, e.g., United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) ("arguments not made before a magistrate judge are normally waived"); *United States v. Moore*, 375 F.3d 580, 584 n.2 (same). But even on its merits, this argument fails. First, Nurse Wilford fails to acknowledge that each of Dr. Petkovich's opinions about Dr. Shah's treatment are disputed by Plaintiff's expert, Dr. Brown, Doc. 157-9, whom Judge Beatty concluded a reasonable jury could credit. *See* Doc. 219 at 28–29. Accordingly, at the summary judgment stage, Dr. Petkovich's disputed opinions about the adequacy of Dr. Shah's care must be disregarded. *Conley v. Bi8rch*, 796 F.3d 742, 746 (7th Cir. 2015) (all evidentiary conflicts must be resolved in the plaintiff's favor).[5]

Additionally, the opinions of a retained physician offered years after the events at issue in the litigation occurred has no bearing on Nurse Wilford's knowledge and ability to act between May 13, 2014 and September 15, 2014. *See, e.g., Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 478 (7th Cir. 1997) (liability requires knowledge of constitutional violation *as it is occurring*); *Horton v. City of Chicago*, 2018 WL 4699790, at *15 (N.D. Ill. Sept. 30, 2018) (examining what defendant knew "in the moments just before" the constitutional violation).

---

[5]     Nurse Wilford attempts to obfuscate these problems by noting that Dr. Brown declined during his deposition to proffer an expert opinion on Nurse Wilford's conduct. Dr. Brown, however, explained that he thought the care she provided Armbruster was poor but would not opine as an expert on the standards of care that apply to nurses. Doc. 133-7 at 23.

Judge Beatty thoroughly reviewed the evidence and concluded that a reasonable jury could conclude, in the days between May 13, 2014 and September 15, 2014, Nurse Wilford was aware that Plaintiff was being denied constitutionally adequate medical care at SWICC and failed to take any action to intervene. *See Lanigan*, 110 F.3d at 478 (defendant's ability to intervene or prevent the harm "is generally an issue for the trier of fact"). Nurse Wilford cannot escape that conclusion by paying an expert several years later, long after Plaintiff filed this lawsuit, to say that the care was not constitutionally inadequate.

Nurse Wilford's reframing of Plaintiff's claim as "essentially that if Dr. Shah does not resolve[] Plaintiff's symptoms within approximately 5 weeks that Nurse Wilford could not rely on Dr. Shah's diagnostic process" is, like her other arguments, a blatant disregard for the summary judgment standards. Nurse Wilford wants the Court to view the evidence in the light most favorable to her, but she, as the moving party, is not entitled to that deference. As Judge Beatty explained, "While Nurse Wilford testified she did not believe Armbruster needed any additional medical attention beyond what Dr. Shah was providing, a jury reasonably could disbelieve her." Doc. 219 at 33. As the evidence discussed above demonstrates, there is ample evidence in the record to establish that Nurse Wilford knew that Dr. Shah's refusal to respond to Armbruster's persistent neurological complaints was inadequate for several months, and yet did "literally nothing about it." Doc. 219 at 33. As Judge Beatty concluded, a jury could reasonably find her liable for failing to intervene. *Abdullahi v. City of Madison*, 423 F.3d 763, 773-74 (7th Cir. 2005).

### Conclusion

Judge Beatty's recommendations on Defendants' motion for summary judgment is sound, and Nurse Wilford's partial objections to his recommendation do not hold water. For these

reasons, Plaintiff asks this Court to overrule Nurse Wilford's objections and adopt Judge

Beatty's Report and Recommendations in its entirety.

Respectfully submitted,

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Michael Kanovitz
Sarah Grady
Katie Roche
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

## <u>CERTIFICATE OF SERVICE</u>

I, Sarah Grady, an attorney, certify that on August 27, 2019, I caused the foregoing Plaintiff's Response to Defendant Wilford's Objections to Report and Recommendations to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff